[No. 1077,. June 27, 1905.]

ANDRES CORCINIO MIERA, Appellant, v. THE TERRITORY OF NEW MEXICO, Appellee.

SYLLABUS.

1. This court cannot assume that the defendant did not have a trial by an impartial jury, to which he was entitled under the Sixth Amendment of the Constitution of the Uni-

Miera v. Territory.

ted States, and Section 3756 of the Compiled Laws of New Mexico, because those summoned as talesmen to complete the panel from which the trial jury was selected, included a smaller percentage of men of the defendant's race than the district from which they were selected contained, or because persons of the defendant's race living in the immediate vicinity of the court house in which the trial took place and who were legally qualified for jury duty were not selected, while some of another race living at much greater distance were selected and summoned to complete the panel.

2. The allegation in behalf of the defendant that there was discrimination against those of his race in the selection of the panel from which the jury for his trial was made up was in violation of the Fourteenth Amendment of the Constitution of the United States, was not sustained by any evidence introduced or tendered.

3. An experienced physician who held an inquest on the body of the woman with whose murder the defendant was charged was properly permitted to testify that, in his opinion she could not have inflicted on herself the wound of which she died, and that she was sitting down when the shot was fired.

4. Evidence of an assault with a pistol by the defendant on the woman with whose murder he was charged, made about three years prior to her death, was properly admitted.

4. It was not error to give the jury the entire statute description of murder in the third degree, although a portion of it could, on the evidence, have no relevancy to the case at bar.

5. The jury was properly instructed that the remarks of counsel were not to be regarded as evidence and that their verdict must be founded solely on the evidence and the law as given by the court.

6. Expressions used in instructions to juries should be considered as qualified by the context and other instructions.

7. Courts are not bound to give instructions, which, even if correct, are merely cumulative.

The facts appear in the opinion.

Appeal from the district court of Dona Ana county, before FRANK W. PARKER, Associate Justice.    Affirmed.

LONG & FORT, for appellant.

A fair and impartial jury is the right of a defendant in a criminal cause and if by reason of any practice whatever he is deprived of that right a court of review should see to it that his right is protected.

> Stauder v. West Virginia, 100 U. S. 303; Neal v. Delaware, 103 U. S. 370; Virginia v. Rives, 100 U. S. 314.

In order that all theories of the case upon which evidence was introduced might be kept in view by the jury, the court should have instructed the jury that if the circumstantial evidence in favor of the defendant raised in the mind of the jury a reasonable doubt as to his guilt, that he should be acquitted. The jury should also have been told that the alleged facts and circumstances must be such as to be absolutely incompatible on any reasonable hypothesis with the innocence of the defendant.

> Sackets Instructions to Juries, p. 639.

GEORGE W. PRICHARD, Solicitor General, for appellee.

The degree of murder is a question of fact for the jury to determine, where the degree depends upon the presence or absence of malice, deliberation, heat of passion, or design or want of design to take life.

> Parish v. State, 18 Neb. 405; People v. Convoy, 97 N. Y. 62; Adams v. State, 29 Ohio 412; Commonwealth v. Sheets, 197 Pa. 69.

Where there is no eye witness to the killing of the deceased it is the duty of the court to instruct the jury in the third degree.

> Territory v. Friday, 8 N. M. 204; Territory v. Aguilar, 8 N. M. 996; Territory v. Padilla, 8 N. M. 510.

Miera v. Territory.

## OPINION OF THE COURT.

ABBOTT, J.—At the March term, A. D., 1904, of the district court for Union county, the defendant was found guilty of murder in the third degree by a jury, and, subsequently, after a motion for a new trial had been overruled, was sentenced to imprisonment for ten years in the penitentiary. The case is before us on appeal.

Before the jury for the trial of the case was completed, the regular panel was exhausted and a special precept was issued by the court to secure talesmen, as provided by law. The attorneys for appellant allege that in securing the talesmen under that precept, fewer "Mexicans" and more "Americans," as they are described in their brief, were included than could have been the case, unless such discrimination had been intended, and they claim that it was intentional and was for the purpose of preventing the defendant from being tried by a jury made up almost wholly of men of his own race, he being a Mexican, as would have been the case if it had been selected proportionately from the members of the two races living in the vicinity and liable to jury duty. Such a discrimination, it is alleged, is in violation, not only of Section 3756 of the Compiled Laws of the Territory of New Mexico, which declares the right to trial by an "impartial jury," but of the Sixth Amendment of the Constitution of the United States, which guarantees the same right, and the Fourteenth Amendment, which forbids what is known as class legislation.

Assuming, as counsel on both sides seem to have done, that the prohibitions in the first clause of the Fourteenth Amendment, which are in terms directed to states, are equally applicable to territories, although territorial legislation is subject to the approval of Congress and the chief executive, and judicial officers of territories are appointed by the president, we do not find that any violation of its provisions was established as claimed in behalf of the appellant. In an affidavit filed by him he alleged certain facts which he said showed discrimination against "Mexicans" and in favor of "Americans" in the making of the panel but he did not state

that the alleged discrimination was because those not selected were "Mexicans" or because those selected were "Americans." The appellant tendered no proof of his charge of discrimination which was rejected and indeed no evidence whatever, except two affidavits not including his own. His affidavit could not be treated as evidence. Smith v. Mississippi, 162 U. S. 591.

But even if all the allegations in his affidavit and in the two others filed in his behalf be considered as proved they do not establish unlawful discrimination. There may have been good and lawful reason for the course taken as suggested further on in this opinion.

It remains, then, to be determined, in this branch of the case, whether the defendant was prevented from having a trial by a fair and impartial jury in the way he charges, for, to such a trial he was unquestionably entitled.

It is claimed in his behalf that he was under the practical necessity of exhausting the peremptory challenges to which he was entitled, on Americans, and so had none left for members of his own race, whom he might otherwise have challenged. We cannot assume that either the defendant's reliance on Mexiacns, or his distrust of Americans, was well founded, that members of either race, who are all units of our great composite nationality, made up of almost all races of men, would be so regardless of their sworn obligation as to permit race prejudice to sway them for or against their fellow-being on trial for his life before them. Even if we made that assumption it would be impossible for this court, sitting as a court of law, to determine from the materials before it, whether any such discrimination as the appellant charges, was actually attempted, since other reasons than those suggested might have led to the preponderance of Americans summoned on the special venire. The record of the trial discloses at least one reasonable ground for the course the appellant says the jury commissioners took in selecting American talesmen from a distance, instead of Mexicans from the immediate neighborhood. It appeared that the trial took place in the community where the woman met her death, that some of the witnesses against the accused were nearly related to her, and that

some who testified in his behalf were nearly related to him. It may well have been that one or both had other relatives in the vicinity, and that they took sides with reference to the matter, as did the witnesses at the trial. Many Mexicans in the neighborhood may, naturally, have been disqualified to serve for that and similar reasons, since the woman's death and the arrest of the defendant on the charge of killing her must have aroused intense feeling, not only among their relatives, but among the friends and acquaintances of each, and especially those of their own race. Besides, it is difficult to perceive what advantage would have accrued to him if the jury had been composed, even wholly, of his own race. The woman with whose murder he was charged, was of the same race, judging from her name, and it could hardly be that Americans would be less likely than Mexicans to desire the punishment of any one proved to have taken her life. In fact, the jury seemed finally to have been made up of seven Mexicans and five Americans, and as unanimity was essential to a verdict, it cannot reasonably be claimed that the seven were unwillingly brought to an agreement by the five.

The appellant excepted to much of the evidence admitted and to the exclusion of much that was not admitted, to the instructions given and to the refusal to give thirty instructions requested; but we do not think it necessary to deal specifically with more than a few of these exceptions.

Doctor Slack, who conducted the inquest, after describing the wound which he said caused the death of Mrs. Vigil, and the position in which he found the body, was permitted to give his opinion, that she was sitting down when the bullet was fired which caused her death, and that it would have been impossible for her to have fired it. We are aware that there are many decisions against the admissibility of such evidence, especially that bearing on the question whether the wound causing death was self-inflicted. It has often been excluded on the ground that it was matter of common knowledge and that after obtaining the facts from the testimony, the opinion of the jury, based on them, would be as reliable as that of a physician.

But we are unable to subscribe to that view, especially as applied to the case at bar.

Opinion evidence is not, in its nature, so distinct from and inferior to what is usually termed direct evidence, as it is, perhaps, commonly assumed to be. The learned author of Bishop's New Criminal Procedure, says, in Section 1073 of that work: "One stating an occurrence in his presence, whatever his form of words, tells us only the opinions he derived from the sensations he felt; he could know nothing more." And in Section 1177: "Opinion * * * is the foundation of all evidence. Even what we term direct proof is, when truly viewed, but the witness' opinion of the source of what he has felt in the organs of sense." In the last analysis, therefore, all testimony may fairly be termed opinion evidence, and the court may properly act on the familiar principle that the best evidence should be offered. Unquestionably, in many cases, so-called opinion evidence would be more helpful than any direct testimony obtainable, and that for two reasons: First. It may be the testimony of one to whose sight, hearing or other senses, has been presented that which cannot be reproduced to the jury. It is said in opposition to the admission of such testimony that the facts should be stated to the jury and the opinion formed by it. But not even the great masters of literature have been able to put in words precisely what they saw; still less what was apprehended by their other senses. There remains always something which eludes expression. In recognition of this truism courts have permitted witnesses to state their opinions with regard to sounds, their character, from what they proceed and the direction from which they seem to come; State v. Slimborn, 46 N. H. 497; Commonwealth v. Pope, 103 Mass. 440; Commonwealth v. Forsey, 103 Mass. 412; as to resemblance of foot tracks; Hotchkiss v. Germania Ins. Co., 5 Hun. 90; whether a person's conduct was insulting; Raisler v. Springer, 38 Ala., 703, and where noisome odors render a dwelling uncomfortable; Kerney v. Farrell, 28 Conn. 317. Quoting these and other decisions, with approval, Field J., said, in Hopt v. Utah, 120 U. S. 430: "Upon the same principle the testimony of the physician as to the direction from

which the blow was delivered was admissible. It was a conclusion of fact which he would naturally draw from the wound. It was not expert testimony in the strict sense of the term, but a statement of a conclusion of fact, such as men who use their senses, constantly draw from what they see and hear in the daily concerns of life." Similar evidence was admitted in Bram v. United States, 168 U. S. 532. In Everett v. State, 62 Ga., 65, the opinion of a person of experience, but not a physician, was admitted on the question whether death was self inflicted.

Second. The opinion offered may be that of a person qualified by study or experience, or both, to understand and explain the subject under consideration, commonly termed an expert. The opinions of such witnesses are taken in all courts on a great variety of subjects, but not usually on the question whether death was self-inflicted.

In State v. Lee, 65 Conn., 265 (1894), however, and in Commonwealth v. Leach, 156 Mass. 99, the testimony of a physician was admitted on that point, but in each of those instances the wound testified of was in the uterus to procure abortion, and it might be said that if it had been an outward wound, open to common observation, the testimony would have been rejected. That objection, it seems to us, goes to the weight and not to the admissibility of such testimony. Physicians have been allowed to testify that sexual intercourse was highly improbable, if not impossible, between a man and a woman in a buggy, which was described to the jury; People v. Clark, 33 Mich. 112; that such intercourse by force was impossible with a woman seated in a rocking chair, which was shown to the jury; State v. Perry, 41 W. Virginia, 641; 24 S. E. Rep. 638; and that it was impossible in a winding stairway, which was described to the jury; McMurran v. Righby, 80 Iowa, 322. Certainly it cannot be claimed that wounds causing death are more a matter of common knowledge than the act to which the human race owes its continuance.

In 41 W. Va., 641, supra., the admission of the testimony in question was put expressly, and in the other cases cited, impliedly, on the ground that the witnesses "had made the human system, including its joints and or-

gans, the subject of peculiar study, such as a jury would be unable to give in the short time allowed them in the examination of the evidence, and thus (could) assist them in arriving at a just conclusion." Precisely that kind of research would qualify one to determine better than an ordinary person could do, whether a wound could have been self-inflicted.

In the case at bar, the testimony of Dr. Slack was not only that of one who had seen the body of the dead woman lying as it fell over, after the fatal shot, the character and slope of the ground where the shooting occurred, and the wound itself, none of which things were seen by the jury or could be precisely described to them, but it was also the testimony of a physician of long experience, who has held inquests in nineteen cases in which death resulted from gun-shot wounds. To exclude such testimony is to hold that the opinion of a jury, based on evidence necessarily incomplete, is preferable to that of a man of learning and experience, who has seen and touched that of which he speaks. The ground on which such testimony should be admitted is well stated in Taylor v. Town of Monroe, 43 Conn. 44, in these words: "The true test of the admissibility of such testimony is not whether the subject matter is common or uncommon, * * * but whether the witnesses offered as experts have any peculiar knowledge or experience not common to the world, which renders their opinions founded on such knowledge or experience, any aid to the court or jury in determining the questions at issue."

The value of the opinion of Dr. Slack it was, of course, for the jury to determine. If it preferred to form and adopt an opinion of its own on the other evidence given, it was quite at liberty to do so.

Evidence that on a certain occasion about three years before Mrs. Vigil's death, the defendant threatened her life with a pistol because, as he alleged, she was receiving the visits of another man, was properly submitted to show the relations of the parties and his disposition toward her when excited by jealousy.

In their brief the attorneys for appellant lay special stress on the fact that the court in its instructions as to

Miera v. Territory.

what constituted murder in the third degree, used substantially the statute description including "culpable negligence" as one of the elements which might render one guilty of such a charge. Culpable negligence, it is urged, could not, on the evidence, have played any part in the death of Mrs. Vigil. We think that the jury could not have been led to suppose, from the instruction given that they were at liberty to find that her death resulted from the culpable negligence of the defendant, and that it was not error to give the statute description of the crime charged in full. Territory v. Eddie, 6 N. M. 555.

The instruction that the remarks of counsel were not to be regarded as evidence, and that the verdict must be found solely on the evidence presented and the law as given by the court, was correct. It left the jury at liberty to give such weight as they might think proper to the arguments of counsel in explaining and interpreting the evidence, but not to regard them as actual evidence.

The other exceptions discussed in the brief for the appellant relate to particular expressions which occur in the instructions to the jury, which apart from the context would possibly be open to objection; but taken in connection with the other instructions as they were given, were not erroneous.

We find no error in the instructions given, and none in the refusal to give all or any of the instructions asked for by the appellant. After instructions have been given properly covering every point in the case, it is not the duty of the court to add further instructions at the request of counsel. Such a course would tend to confuse the jury and distract attention from the facts on which they must pass.

Judgment affirmed.

Edward A. Mann, A. J., John R. McFie, A. J., Wm. H. Pope, A. J., Frank W. Parker, A. J., concur.

Mills, C. J., having decided the case in the court below took no part in this decision.