State v. Belisle, 22 N. M. 285.

HANNA and PARKER, J.J., concur.

---

[No. 1880, November 21, 1916.]
[Rehearing Denied December 21, 1916.]
STATE v. BELISLE.

SYLLABUS BY THE COURT.

1. Evidence examined, and held to show no variance between the allegation of the indictment that the weapon employed was unknown and the proof adduced by the state.

P. 286

2. Courts are not bound to give instructions, which, even if correct, are merely cumulative, and state in another form a proposition of law already given to the jury.

P. 287

Appeal from District Court, Colfax County; T. D. Leib, Judge.

Thomas J. Belisle was convicted of voluntary manslaughter, and appeals. Affirmed.

E. C. CRAMPTON and MORROW & ALFORD, all of Raton, for appellant.

H. S. BOWMAN, Assistant Attorney General, for the State.

OPINION OF THE COURT.

ROBERTS, C. J.—Appellant was indicted by the grand jury of Colfax county for the murder of William C. Payne. The indictment was in the usual form of a first

degree indictment, but did not designate the instrument employed in the killing, charging, however, that the homicide had been perpetrated "with a certain deadly weapon, the exact size, kind, and description of which is to these grand jurors unknown." Appellant was brought to trial upon this indictment, and the jury returned a verdict finding him guilty of voluntary manslaughter. From the judgment pronounced upon the verdict, he prosecutes this appeal.

[1] The first question presented is alleged error upon the part of the trial court in not sustaining appellant's motion for an instructed verdict made at the close of the state's case in chief and renewed at the close of the whole case. The ground of said motion was that there was a variance between the allegations of the indictment and the proof, in that the indictment charged that the weapon was unknown, whereas the proof showed that the homicide was perpetrated by means of a pitchfork.

No person, other than the defendant and the deceased, was present at the time of the homicide, and the witnesses for the state testified that blood was found upon the handle of a pitchfork found near the body of the deceased, and also that there was blood upon the neck yoke, attached to the tongue of a wagon by a wire; also blood splotches were found in various places upon the ground near the scene of the encounter.

Appellant testified as a witness in the case, and stated that he struck the deceased over the head with the handle of the pitchfork in question. Appellant contends that it was the duty of the state to show that the weapon alleged in the indictment to have been used in perpetrating the assault was unknown to the grand jury, and could not have been known by reasonable exertion and diligence.

It is true, as appellant contends, that the evidence on behalf of the state pointed strongly to the fact that the appellant had used the pitchfork in assaulting the deceased, but this was due solely to the fact that blood was found on the handle thereof. Blood was likewise found upon a neck yoke, but this was wired to the tongue of a wagon; hence appellant argued this instrument could not

have been employed. We think, when all the evidence offered on behalf of the state is considered, the weapon employed by appellant in effecting the death of the deceased is still a matter of doubt. Of course, when we turn to the testimony of the defendant, the matter is cleared up, and the fact is established that he used the pitchfork, but the grand jury had no right to call him as a witness. That body apparently had before it all the witnesses, save the defendant, who knew anything about the transaction, and after all the witnesses had detailed all the facts of which they were cognizant, the question of the weapon used was still in doubt, but pointing more or less strongly to the fact that the pitchfork had been employed. If appellant's contention were correct that the allegation is material and the proof must correspond therewith, had the grand jury alleged that the pitchfork was employed, the appellant could easily have secured his acquittal by testifying that he used the neck yoke or some other instrument, and convincing the jury of the truth of such fact.

The case of State v. Klasner, 19 N. M. 474, 145 Pac. 679, does not support appellant's contention. In that case it affirmatively appeared by the evidence offered on behalf of the state that the grand jury could readily have ascertained the name of the true owner. Such fact was a matter of record, and did not, as here, depend upon circumstantial evidence, which might have been easily explanied away by the defendant. Hence we conclude that the trial court properly overruled the motion for an instructed verdict.

[2] Appellant complains of the refusal of the court to give each of his tendered instructions, reading as follows:

"The court instructs you that a man need not wait until the blow is actually struck before he has a right to act upon appearances and defend himself. It is enough if he honestly believes, and has reason to believe, from the attitude, conduct, and manner of the deceased, that he was in danger of his life, or of great bodily harm.

"The court instructs you that in determining whether the circumstances existed that would justify the defendant in inflicting the wound upon William C. Payne which subse-

quently resulted in his death, you must determine that fact from the condition and circumstances that surrounded the defendant at the time and place of the trouble as they reasonably appeared to him at that time; that is, by placing yourself, in your own minds, as far as may be possible from the evidence, under the same circumstances in which the defendant was placed at the time of the killing, taking into consideration as far as the evidence may enable you to do so the temperament of the defendant, and his moral and physical courage, or the lack thereof."

The court of its own motion instructed the jury as follows:

"You are further instructed that a person acting in the lawful defense of himself need not be in actual imminent danger of his life, or great bodily harm, before he may slay his assailant. It is sufficient if in good faith he had a reasonable belief, from the facts as they appeared to him at the time, viewed from his standpoint, that he was in such imminent peril. It is not enough, therefore, that he should merely believe he is in such imminent peril. He must have reasonable cause for so believing. Whether or not he had a reasonable cause for so believing is for you to determine from all the facts and circumstances given in evidence. If you should believe from the evidence that the defendant did not have a reasonable cause to so believe, you cannot acquit him on the grounds of self-defense, although you may believe he really thought himself in danger."

From the quoted instruction given by the court, it will be seen that the substance of both the requested instructions was given by the court to the jury. "Courts are not bound to give instructions, which, even if correct, are merely cumulative." Miera v. Territory, 13 N. M. 192, 81 Pac. 586. The requested instructions only stated, in a different form and manner, the substance of the ones given by the court, in so far as the instructions were applicable to the evidence; hence the court did not err in refusing them.

We have not been able to find in the transcript of testimony any evidence whatever bearing upon the temperament of the defendant, or his moral and physical courage, or lack thereof, save some conflict of character witnesses, as to his reputation for peace and quietude.

The court's instructions 16 to 20, inclusive, fully covered the law of self-defense, applicable to the facts in this

case. Of course, in this case, as in all others where the question of self-defense arises, the instructions relating to the exercise of the right might have been couched in various forms, each of which would have stated the law correctly. Where the court fully explains to the jury, in the instructions given, the law of self-defense applicable to the facts in the case, it is not required, at the request of the defendant, to restate the same propositions in different words. To so hold would enable a defendant in such a case to secure an unfair advantage by having the court repeat to the jury in different words a proposition once clearly stated so many times that the jury might become confused as to the issues and incline to the belief that the court was of, the opinion the defendant had acted only in self-defense.

Finding no error in the record, the judgment will be affirmed; and it is so ordered.

HANNA and PARKER, J.J., concur.

---

[No. 1898, September .20, 1916.]
[Rehearing Denied December 23, 1916.]
STATE v. DANIELS.

### SYLLABUS BY THE COURT.

A party seeking a postponement of a trial for any cause should ordinarily apply therefor by written motion, supporting same by affidavit.

Appeal from District Court, Guadalupe County; D. J. Leahy, Judge.

James Noah Daniels was convicted of manslaughter, and appeals. Affirmed.

F. FAIRCLOTH of Santa Rosa, for appellant.

H. S. BOWMAN, Assistant Attorney General, for the State.