State v. Bailey, 27 N. M. 145.

---

[No. 2424. Jan. 14, 1921.]

## STATE v. BAILEY.

[Rehearing Denied June 20, 1921.]

### SYLLABUS BY THE COURT.

1. Appellant cannot predicate error upon the action of the trial court in improperly overruling his challenge to a juryman, when at the final impaneling of the jury he had not exhausted his peremptory challenges and the objectionable juryman was not forced upon him. P. 152

2. Evidence of threats is admissable in a case of homicide, although no one is definitely designated. P. 152

3. The reputation of the deceased as a man of peaceable character is competent evidence on behalf of the prosecution after such character has been attacked and put in evidence by the defense. P. 153

4. Proof of a witness' particular overt acts of wrongdoing is ordinarily relevant as impeaching evidence. The extent of such examination rests largely in the discretion of the trial court. P. 154

5. Where instructions given are correct and cover the same ground as those requested, or where those requested

incorrectly state the law as applicable to the case, the instructions requested are properly refused. '     P. 155

### ON MOTION FOR REHEARING.

6. In a prosecution for murder, an instruction held fully to cover the defense of accidental discharge of the gun in defendant's hands thereby killing deceased.     P. 158

7. In a prosecution for murder, where the defense of accidental killing was interposed, an instruction that if the jury believed that deceased was accidentally killed, or if they entertain a reasonable doubt thereon, they should acquit, held correctly refused, as not including all necessary elements.     P. 158

8. In a prosecution for murder, where the defense of accidental killing was interposed, an instruction in the exact language of Code 1915, § 1472, held properly refused, as being inapplicable and as being abstract.     P. 160

9. In a prosecution for murder, an instruction held not prejudicially erroneous, although confusing the doctrine of self-defense and the doctrine of defense of habitation.  P. 161

10. An instruction not excepted to need not be considered on appeal.     P. 163

Appeal from District Court, Grant County; R. R. Ryan, Judge.

Sylvester E. Bailey was convicted of murder in the first degree, and he appeals. Affirmed.

K. K. Scott, of Breckenridge, Tex., and Alvan N. White, of Silver City, for appellant.

"Threats, which are too general or too indefinite, not connecting the person slain or assaulted, therewith, are inadmissable. It seems that the threat must in some way designate or have reference to the person intended to be injured." Michie on Homicide, vol. 1, p. 757, and the authorities cited thereunder.

And speaking of a case very much like the case at bar the Supreme Court of Missouri said:

"Deceased statement that 'the first nigger that fools with me I'll put him to his end' was held inadmissible, although communicated to the defendant, because a mere conditional threat directed against no particular person, being a mere idle boast." State v. Guy, 69 Mo. 430. Also see 6 Enc. of Evid. 784.

State v. Bailey, 27 N. M. 145.

Also see 6 Enc. of Evid. 784.

That the court erred in permitting the witness to testify over the objection of defendant that the deceased was not a quarrelsome man, before the deceased's reputation or character had been brought into question.

And evidence showing the character or reputation of the deceased as a quiet and peaceful man cannot be given by the state in a prosecution for homicide in the first instance and as a part of its case. Carr v. State, supra; State v. Potter, 13 Kan. 414; Dock v. Com., 21 Gratt. 909.

The good character of the deceased is not a subject of proof in a prosecution against another for killing him, where his character has not been attacked by the defense. Miers v. State, 34 Tex. Crim. Rep. 171, 53 Am. State Rep. 705, 29 S. W. 1074; Moore v. State, 46 Tex. Crim. Rep. 54, 79 S. W. 565; Melton v. State (Tex. Crim. App.) 83 S. W. 822; Jimmerson v. State, 133 Ala. 18, 32 So. 141; People v. Bezy, 69 Cal. 223, 7 Pac. 643; State v. Eddon, 8 Wash. 292, 36 Pac. 139.

The court erred during the progress of the trial, and while the defendant, Sylvester E. Bailey, a witness in his own behalf, was on the stand testifying, in permitting said witness to be cross-examined by the district attorney over the objection and exception of the defendant, to the great prejudice of defendant, that he had been guilty of other offenses against the law, and directly attacked his character as a defendant before his character had first been put in issue by him, to which the defendant then and there duly excepted. State v. Graves, 21 N. M. 556; Bishop's New Crim. Procedure vol. 1, sec. 1124; Thompson on Trial, vol. 1, sec. 653-655; State v. Lapage, 24 Am. Rep. 75; Wigmore on Evid., vol. 1, sec. 193; People v. Brown, 72 N. Y. 571, Am. Rep. 183; Clark v. State, 78 Ala. 474; Elliott v. State, 34 Neb. 48; People v. Crapo, 76 N. Y. 288, 32 Am.

Rep. 302; Ryan v. People, 79 N. Y. 593; State v. Huff, 11 Neb. 17; People v. Hamblin, 68 Cal. 101, 8 Pac. 687; Com. v. Barnard, 97 Mass. 587; People v. Cummins, 47 Mich. 334, 11 N. W. 184-186; State v. Kelsoe, 76 Mo. 505; State v. Lawhorn, 88 N. C. 634; State v. Efler, 85 N. C. 585; Gale v. People, 20 Mich. 159; People v. Gay, 7 N. Y. 378.

Where there is evidence tending to show misadventure in prosecution for homicide, failure to instruct the jury with reference thereto, is error, though no request was made for such instruction. French v. Com., 28 Ky. L. Rep. 64, 80 S. W. 1070; Roberts v. State, 112 Ga. 542, 37 S. E. 879; State v. Hartzell, 58 Iowa 520, 12 N. W. 557; Fitzgerald v. State, 112 Ala. 34, 20 So. 966; Casteel v. State, 73 Ark. 152, 83 S. W. 953; People v. Grill, 3 Cal. App. 514, 86 Pac. 613; Darby v. State, 9 Ga. App. 700, 72 S. E. 182; State v. Hartzell, 58 Iowa 520; 12 N. W. 557; Lewis v. Commonwealth, 140 Ky. 652, 131 S. W. 517; Messer v. Commonwealth, 27 Ky. L. R. 527, 85 S. W. 722; French v. Commonwealth, 28 Ky. L. Rep. 64; 88 S. W. 1070; Brock v. Commonwealth, 33 Ky. L. Rep. 630; 110 S. W. 878; People v. Thompson, 122 Mich. 411, 81 N. W. 344; Williamson v. State, 2 O. C. C. 292, 1 O. C. D. 492; Commonwealth v. Silcox, 161 Pa. 484, 29 Atl. 105; Commonwealth v. Long, 17 Pa. Super. Ct. 641; Mitchell v. State, 36 Tex. Cr. App. 278, 33 S. W. 367, 36 S. W. 450; Brittain v. State, 36 Tex. Cr. App. 406, 414, 37 S. W. 758; Paderes v. State (Tex. Cr. App.), 45 S. W. 914; Powell v. State (Tex. Cr. App.), 59 S. W. 1114; Miller v. State, 52 Tex. Cr. App. 72, 105 S. W. 502; State v. Legg, 59 W. Va. 315, 316, 53 S. E. 545, 3 L. R. A., N. S. 1152; Ryan v. State, 115 Wis. 488, 92 N. W. 271.

O. O. Askren, Attorney General, and H. S. Bowman, Assistant Attorney General, for the State.

From the foregoing it must appear that before a reversal, because of the excusing of a juror can be

relied upon, the appellant must show that he was prejudiced by reason of such action. State v. Du-Vall, 135 La. 710; 65 So. 904; L. R. A. 1916, E. 1264; Pittsburgh, etc., Railway Co. v. Montgomery, 152 Ind. 1, 71 Am. St. Rep. 301, 319; McGuire v. State of Mississippi, 37 Miss. 369, 376; People v. Durrant (Cal.), 48 Pac. 75, 78; Glasgow v. Metropolitan Street Ry. Co. 191 Mo. 347, 89 S. W. 915.

Where party has not exhausted his challenges to jury he cannot complain. Terr. v. Emilio, 14 N. M. 147; Terr. v. Lynch, 18 N. M. 15; State v. Rodriguez, 23 N. M. 156; 1 Thompson on Trials, pp. 45, 147.

Threat was properly admitted. Ford v. State, 71 Ala. 385; Jones v. State, 78 Ala. 8, 14; Roland v. State, 105 Ala. 41; Mathis v. State, 34 Tex. Cr. R. 39, 28 S. W. 817; De La Garze v. State, 61 S. W. 484; Armstrong v. State, 98 S. W. 844; Hixon v. State, 61 S. E. 14; Hardy v. Comm., 67 S. E. 522; Hodge v. State, 7 So. 593; Brown v. State, 5 N. E. 900; Taylor v. State, 72 S. W. 396.

Character and reputation of deceased was impliedly attacked and therefore evidence that deceased was of peaceble character was proper.

Overt acts of witness were relevant and admissible. 1 Michie on Hom. 680; People v. Webster, 34 N. E. 730.

Defendant's requested instruction ten was properly refused because it was merely an abstract proposition of law. 2 Thomp. on Trial, sec. 2321.

## OPINION OF THE COURT.

RAYNOLDS, J. The appellant, Sylvester E. Bailey, was indicted at the March, 1919, term of the district court for Grant county, N. M., for the killing of one James N. Bedore, and a verdict of murder in the first degree was returned by the jury. Appellant filed a motion for a new trial, which was overruled and the appellant sentenced to be executed Friday, April 25, 1919. From the verdict and sentence appeal is taken to this court.

At the time of the homicide in question, the appellant was a prospector and miner living on his mining claim at a place called Vanadium, situated near Silver City in Grant county. On the mining claim were a store building, a small adobe residence, and an automobile garage. Appellant had rented his store to one L. E. Freeland. Freeland had rented the dwelling at the direction of appellant during his absence to the deceased, Bedore, for a period of three months ending September, 1918. Upon appellant's return to his claim he occupied a part of a box car which had been used by the railroad as a temporary depot. While appellant was waiting for the possession of his property, the deceased, Bedore, had turned over his dwelling to one Rose Freeland, who was then occupying it. Appellant notified the deceased and Rose Freeland that he desired possession of his dwelling on September 1, 1918. Deceased, Bedore, shortly after September 1st had tendered to the appellant another month's rent and appellant had refused to accept it. There was testimony to show that on the morning of the killing the deceased had stated that he was about to move from the premises of the appellant on that day, and that he had made arrangements with one of the witnesses to secure a team to move his belongings from said premises.

The appellant in his testimony, and by the testimony of other witnesses, attempted to show that the gun from which the fatal shot was fired was discharged by accident in a struggle between him and the deceased, after the appellant had taken the gun from under his pillow and used it as a club to drive off the deceased, who was about to attack him in his room. Upon examination of the body of the deceased, it was found he was shot in the abdomen, about two inches below the breastbone and a half inch to the right of the median line, and there was no point of exit. The shirt and underclothes had holes in them and were powder burned. There were

no eyewitnesses to the homicide, and the deceased made no statement, living only a few minutes after he fell.

Appellant assigns errors as follows:

The court erred in sustaining the two challenges made by the state to certain jurymen in overruling the challenges made by the appellant to two others in regard to their qualifications. Upon this assignment the law is well settled in this state.

"We are of the opinion that Mr. Thompson correctly states the general rule regarding the discretion of the court in respect to impaneling the jury as follows: 'In the superintendence of the process of impaneling the jury, a large discretion is necessarily confided to the judge, which discretion will not be revised on error or appeal, unless it appears to have been grossly abused or exercised contrary to law.' 1 Thompson, Trials, § 88." Territory v. Lynch, 18 N. M. 15, at page 28, 133 Pac. 405, at page 407.

"Assuming that the trial court excused this juror without cause, nevertheless we do not consider that appellant has ground for complaint. In 1 Thompson on Trials, § 43, the author, after pointing to the fact that the right of peremptory challenge is a right to reject, and not a right to select, says.

" 'Therefore, a party cannot, in general, complain that the court has excused jurors without cause, or sustained untenable challenges of the other party, thus driving the objecting party to exhaust his peremptory challenges upon other members of the panel, or upon special veniremen or talesmen.' See, also, Cyc. 315; 16 R. C. L. 291.

"Mr. Thompson, at section 120, more completely states the rule in the following language:

" 'No party can acquire a vested right to have a particular member of the panel sit upon the trial of his cause until he has been accepted and sworn. It is enough that it appear that his cause has been tried by an impartial jury. It is no ground of exception that, against his objection, a juror was rejected by the court upon insufficient grounds, unless through rejecting qualified persons, the necessity of accepting others not qualified has been purposely created.'

"We adopt this statement of the law, which is undoubtedly conclusive upon the assignment under consideration, in which, therefore, we find no merit."

State v. Rodriguez, 23 N. M. 156, at pages 164, 165, 167 Pac. 426, at page 428 (L. R. A. 1918A, 1016).

[1]    In the present case it also appears that the defense had not exhausted its peremptory challenges when the jury was finally impaneled, and the action of the court is not error, for this as well as the foregoing reasons:

"The weight of authority is to the effect that, when a challenge for cause to a juror is improperly overruled, the error will be regarded as immaterial and without prejudice, if the objecting party did not challenge the juror peremptorily and his peremptory challenges were not exhausted; this upon the theory that a party must use all available means to exclude all objectionable jurors, and that a failure to do so constituted a waiver of his objection. 24 Cyc. 323, 324. We agree with the majority rule. This being true, it is our duty to assume that appellant was not harmed by the failure to sustain his challenge for cause." State v. Smith, 24 N. M. 405, at page 408, 174 Pac. 740, at page 741.

"It is our opinion that the better rule is that an erroneous overruling of a challenge for cause, even though the peremptory challenges are thereafter exhausted, will not warrant a reversal of the judgment unless it is further shown upon appeal that an objectionable juror was forced upon the challenging party and sat upon the jury after such party had exhausted his peremptory challenges. [Citing cases.]" Colbert v. Journal Pub. Co., 19 N. M. 156, at page 160, 142 Pac. 146, at page 147.

"Finally it is a rule of paramount importance that errors committed in the overruling of challenges for cause are not grounds for reversal, unless it be shown an objectionable juror was forced upon the challenging party after he had exhausted his peremptory challenges. If his peremptory challenges remain unexhausted so that he might exclude the objectionable juror by that means, he has no ground for complaint." 1 Thompson on Trials, § 68, p. 147.

See, also, People v. Durrant, 116 Cal. 179, 48 Pac. 75, at page 78.

[2]    The court erred in admitting evidence of the alleged statement not amounting to a threat, highly prejudicial to appellant. The statement or threat was as follows:

"He said he would protect his ground if he couldn't by law, he would with his gun. He had done it and he could do it again."

State v. Bailey, 27 N. M. 145.

Standing alone such an indefinite statement might be objectionable as a threat, but with other evidence of the relationship between the parties and the circumstances of the case, it is clearly a threat and properly admitted.

"One of the errors assigned by the defendant is that evidence of a threat made by him to shoot a person whom he did not name, was admitted. There was, besides the language of the threat itself, evidence that the defendant had been warned against Camilo Martinez not long before he made the threat, and the undisputed fact that he, soon after he made it, began a controversy with Martinez on a matter in dispute between them, and did shoot him. It was for the jury to determine from the evidence whether he had reference to Martinez when he made the threat, if they believed he made it. State v. Cochran, 147 Mo. 517; Moore v. People (Colo.) 57 Pac. 858; State v. Vance (Wash.) 70 Pac. 34." Territory v. Alarid, 15 N. M. 165, at page 170, 106 Pac. 371, at page 372.

"It is a general rule that threats made by the defendant accused of murder, to kill some person not definitely designated, especially when made shortly before the commission of the crime to which they may be construed to refer, are admissible in evidence in connection with other explanatory circumstances on proof of the corpus delicti. See cases cited in note to the case of State v. Nelson, 89 Am. St. Rep. 691. Here the circumstances in evidence were sufficient to have warranted the jury in believing that the note was sent to the justice of the peace on the morning immediately preceding the homicide, and the weight to be given to the evidence was for the jury. See, also, 13 R. C. L. 924." State v. Martinez, 25 N. M. 328, at page 335, 182 Pac. 868, at page 870.

See, also, Territory v. Hall, 10 N. M. 545, at page 552, 62 Pac. 1083; Territory v. Pratt, 10 N. M. 138, at page 140, 61 Pac. 104; Miera v. Territory, 13 N. M. 192, at page 200, 81 Pac. 586.

[3] The court erred in permitting a witness to testify over appellant's objection that the deceased was not a quarrelsome man before deceased's reputation or character had been attacked. The general rule is that—

"Testimony as to the deceased's peaceable character is not competent on behalf of the prosecution until his character

has been put in issue by the defendant." 6 Ency. of Ev. p. 659.

This assignment is without merit. The character or reputation of the deceased had not been put in issue in the cross-examination, but the defendant had sought, unsuccessfully, to elicit facts which would show that the deceased was a quarrelsome and violent man. The evidence on redirect examination, the admission of which is assigned as error, simply followed the cross-examination and was properly admitted to explain and amplify the matters testified to on such cross-examination.

[4] The court erred in permitting the appellant while testifying to be cross-examined to the effect that he had been guilty of other offenses against the law. It is elementary and has been decided by this court many times that one offense may not be shown as evidence of the commission of another offense. In this case, however, the evidence objected to was not of other crimes, but of misconduct in the assertion of his rights, and was limited to the purpose of affecting the credibility of the witness; the court so instructing upon request as follows:

"Gentlemen, it has been permitted to inquire of certain questions of the defendant concerning with respect to alleged moral misconduct—these questions and answers have been solely for the purpose of inquiring into the credibility of the accused as a witness and as affecting his credibility. You will consider them as affecting the credibility of the accused as a witness, not in his capacity as an accused."

We find no error in this assignment. The general rule in matters of this kind is laid down in the case of State v. Perkins, 21 N. M. 135, at page 144, 153 Pac. 258, at page 261, where the following language is used:

"Complaint is also made of the refusal of the trial court to permit the appellants, on cross-examination of Mrs. Kubena, a very important witness for the state, to ask the witness as to specific acts of wrongdoing on her part. The same is true

of the prosecuting witness, Mrs. Knapp. The law in this jurisdiction was settled by the territorial Supreme Court in the cases of Territory v. Chavez, 8 N. M. 528, 45 Pac. 1107; Borrego v. Territory, 8 N. M. 446, 46 Pac. 349; and Territory v. De Gutman, 8 N. M. 92, 42 Pac. 48. There is a sharp conflict in the authorities upon this question, but, as the territorial Supreme Court has adopted the rule that proof of a witness' particular overt acts of wrongdoing are ordinarily relevant as impeaching evidence, but that such acts can never be shown by any evidence outside the examination of the assailed witness, and that the extent of such examination rests largely in the discretion of the trial court, we can see no good reason to depart from the rule of practice thus established."

[5] The alleged assignments of error, Nos. 5, 6, 8, 9, and 10, are upon the refusal of the court to give certain instructions asked by the appellant. The rule in this jurisdiction is that if the instruction given by the court properly presents the law of the case to the jury, it is not error to refuse a requested instruction, covering the same ground. Territory v. Baker, 4 N. M. (Gild.) 236, at page 237, 13 Pac. 30; Cunningham v. Springer, 13 N. M. 259, at page 287, 82 Pac. 232; Territory v. Pierce, 16 N. M. 10, at page 14, 113 Pac. 591.

Instruction No. 1 asked for by the appellant is also objectionable because it includes in it the element of heat of passion and the absence of a deadly weapon, when the question was not involved in this phase of the case and it is admitted that the killing was done with a deadly weapon. In a subsequent instruction the court treating the law of manslaughter set forth the effect of heat of passion in reducing the grade of the crime from murder to manslaughter. All the instructions asked for are covered by those given by the court and those given by the court sua sponte correctly state and apply the law.

Realizing the importance of a case of this nature, we have carefully read the transcript with the view of ascertaining whether or not the appellant's rights

were properly protected.  We have come to the conclusion after such examination that the instructions requested were properly refused, as they were covered by instructions given by the court, and that those given by the court, to which objection was made, correctly and fully set forth the law applicable to the evidence adduced by the state and the appellant, and that a fair and impartial trial was had.

Finding no error in the record, the judgment of the lower court is therefore affirmed, and it is so ordered.

ROBERTS, C. J., and PARKER, J, concur.

### ON MOTION FOR REHEARING.

RAYNOLDS, J.   A motion for rehearing has been filed by the appellant, in which he calls attention to a condition in the instructions which it is alleged was presented in the original briefs, and was overlooked by the court.   The defense in the case was accidental killing.   Surrounding this general proposition there were questions as to the law of the defense of habitation, the law of self-defense, and the law of excusable homicide; but these questions were all collateral to the ultimate specific defense of accidental killing.   In describing the occurrence, the defendant, the only witness on the subject, testified as follows:

"Q.  Do you state now to the jury that in the struggle over this gun, when you hit him and he grabbed the gun, whether you pulled the gun off, or did he pull the gun off? A.  He pulled the gun off, or it went off.  I don't say how that was; it was in the struggle, in a mad moment.  I didn't pull the trigger, and I didn't shoot the man, and I didn't take the gun with that intention, and I didn't shoot him.

"Q.  How were you using it—as a club?  A.  Yes; to strike him.

"Q.  For what purpose were you doing that?  A.  To keep him from attacking me, and perhaps killing me."

On cross-examination, appellant, when pressed for a more definite statement as to just how the killing occurred, testified as follows:

"Q. What did he do when you hit him? A. He grabbed the gun. As I said, the gun went off in the tussle.

"Q. That was accidental shooting? A. Yes.

"Q. Self-defense, but coupled with an accident, caused the deceased's death? A. That's the idea; he killed himself.

"Q. Committed suicide? A. That is what I want the jury to believe; he grabbed the gun, and in the tussle the gun went off without my putting my finger on the trigger.

"Q. Mr. Bailey, you were holding the gun by the handle, were you, when you hit him, and he grabbed the barrel? A. Grabbed right this way.

"Q. Got hold of the gun barrel? A. No; got hold with both hands, got hold of the whole thing.

"Q. The whole thing? A. Yes; the whole thing, and I believe that—that's the hammer, and at the time he grabbed that way and got in that position, he grabbed—his hand went over there and pulled the hammer back, and in the tussle it released and caused the gun to go off. * * *

"Q. You shot the man accidentally? A. The man shot himself.  .

"Q. The man shot himself? A. Yes.

"Q. You were acting in self-defense? A. And I hit him in self-defense, and acted all the time in self-defense.

"Q. You had no feeling against that man whatever? A. There was no intention to shoot him. I didn't shoot him. I didn't take up the gun to shoot him."

It will thus be seen that the appellant undertook to say and did say that the deceased caused the gun to be discharged by grabbing hold of it while it was in the appellant's hands being used as a club. At the time of the trial counsel for appellant evidently took the view that this was what the testimony showed, and in accordance therewith requested the court to give instruction No. 19, which was done. This instruction is as follows:

"19. You are instructed that, if you find from the evidence in this case that on the occasion of the killing of James M. Bedore, the deceased, immediately before the said killing,

entered the house or place of abode of defendant in a violent and angry manner, and either assaulted the defendant, or manifested an immediate intention to violently assault the defendant, and the defendant, believing it was necessary to protect himself from such violent assault of the deceased, seized a pistol and struck the deceased with it, and the deceased seized the pistol in the hands of the defendant, and in the struggle between the deceased and the defendant, which thereupon ensued, the deceased caused the pistol to be discharged in said struggle, and the deceased was thereby killed, then the defendant would not be guilty as charged, and you should acquit him; and if you have a reasonable doubt as to such facts, you should acquit defendant."

[6]  This instruction, while it is not now objected to by counsel for appellant as being erroneous, is now said to be partial and insufficient to cover the whole ground, for the reason that it restricts the defense of accidental killing to a case where the gun was caused to be discharged by the deceased, and does not include the accidental discharge of the pistol by either the deceased or the defendant. It clearly appears, however, from the quotation of the testimony heretofore made, that the instruction exactly covers the situation as portrayed by the defendant in his testimony. He denies that he accidentally discharged the gun, and asserts that the deceased caused it to be discharged. Under such circumstances the instruction fully covers the facts as developed at the trial, and the appellant has no cause for complaint of the same.

[7]  By way of further argument to the effect that the defense of accidental homicide was never fully presented to the jury, counsel for appellant complain of the refusal of the court to give their requested instruction No. 8, which is as follows:

"8.  The court instructs the jury that if they believe from the evidence that James M. Bedore was accidentally killed, or entertain a reasonable doubt thereon, you should find the defendant not guilty."

It is apparent at a glance that the requested instruction was erroneous, and was correctly refused.

State v. Bailey, 27 N. M. 145.

The instruction directs the jury that, if the deceased was accidentally killed under any circumstances whatever, the defendant should be acquitted. This instruction leaves out of consideration all of the circumstances showing whether the defendant was at fault, was the aggressor, or was entirely in the wrong in the use of the pistol, as outlined in the testimony. These circumstances must necessarily appear in the instruction before it would be competent for the court to direct the jury that the accidental killing of the deceased would entitle the defendant to an acquittal.

Much reliance is placed by appellant upon the case of State v. Legg, 59 W. Va. 315, 53 S. E. 545, 3 L. R. A. (N. S.) 1152. In that case a wife was on trial for the murder of her husband. The defense was accidental killing, and the facts were that her husband instructed her to hand him his gun, and she undertook to get the gun down from the rack where it was kept to hand to him, and, according to the defendant, it was accidentally discharged and killed the husband. The defendant requested two instructions, which were refused as requested, but erroneously modified, and, as modified, given by the court; the first being in the exact language of appellant's instruction No. 8, supra, and the second applying the doctrine of accidental killing to the specific facts as above set out. Counsel overlook the distinction between the Legg Case and the case at bar. In the Legg Case, the defendant, in any view of the testimony, either for the prosecution or defense, was engaged in an entirely lawful act, unaccompanied by any circumstances which could deprive her of her defense of accidental killing. She could not be guilty unless the killing was intentional. In the case at bar, under the facts shown, the appellant may have been guilty, even if the firing of the gun was accidental, by reason of his attitude towards and in the controversy. Appended to the Legg Case is an

extensive note, collecting the cases on accidental killing as an excuse.

[8]    Complaint is made of the refusal of the court to give appellant's requested instruction No. 1. This instruction is in the exact language of section 1472, Code 1915, which is as follows:

"Such homicide is excusable when committed by accident or misfortune [in lawfully correcting a child], or in doing any other lawful act by lawful means, with usual and ordinary caution, and without any unlawful intent; or by accident and misfortune in the heat of passion, upon any sudden and sufficient provocation; or upon sudden combat, without any undue advantage being taken, and without any dangerous weapon being used, and not done in a cruel or unusual manner."

The instruction omits only the words in brackets above indicated. The instruction as asked is clearly inapplicable. It is an abstract statement of the law, and no attempt is made to apply the provisions of the statute to the facts in the case. But, even assuming that the court might well have modified the instruction and ·applied the statute to the facts in the case, we think the court fully covered the ground in instruction No. 19, supra. It is to be observed that the statute covers three classes of cases: (1) Where the homicide is committed by accident or misfortune in doing any other lawful act by lawful means, with usual and ordinary caution and without any unlawful intent; (2) by accident or misfortune in the heat of passion upon a sudden and sufficient provocation; and (3) upon a sudden combat without any dangerous weapon being used, etc.

We assume that there is no magic in the word "excusable" as used in the section, and that, if every phase of appellant's defense was duly presented in the instructions, he will have no cause to complain at the refusal of the court to use the exact language of the statute. The question, then, is whether the instructions given did cover the whole field. It is to be observed that instruction No. 19, directed the

jury that under the circumstances detailed by the defendant and assumed in the instruction, he should be acquitted. The instruction, therefore, in effect directed the jury that, under the assumed circumstances, the act of striking deceased with a pistol was a lawful act by lawful means, with usual and ordinary caution, and without any unlawful intent. This satisfied the first clause of the statute.

The second clause of the statute assumes the presence of heat of passion. An examination of defendant's testimony discloses that he disavows heat of passion and states that he acted at all times solely in self-defense. This clause of the statute is therefore inapplicable to the defense interposed.

The third clause of the statute contemplates a sudden combat, without any dangerous weapon being used. The defendant in his testimony says that he entered into no combat, but that he merely defended himself against the assault of the deceased. This does not constitute combat, as used in the statute. Sudden combat signifies a sudden fight in the nature of a duel, in which both participate in an aggressive way, rather than a one-sided affair, in which one party merely defends himself against the assault of another. It thus appears that section 1472, Code 1915, is in no way applicable to the facts in the case, except the first clause thereof, which as before seen, was substantially presented in instruction No. 19.

[9] Appellant complains of instruction No. 18 on the subject of the defense of one's person while in his own dwelling and the force which may be employed to expel the intruder. The instruction is as follows:

"18. You are instructed that a person may repel force by force in the defense of his person, being in his own habitation, against one who manifestly intends and endeavors violently to enter therein and to do him bodily harm, and if a conflict ensue under such circumstances, and life is taken,

the killing is justifiable. It must appear, however, that the assault was imminently perilous, and unless there be an apparent manifestation of an intent to take life, or to do great bodily harm, no assault will justify the killing of an assailant. A person repelling an attack in his own dwelling is not compelled to flee from his adversary, but he may use such force as is necessary to expel him therefrom, and he may stand his ground and defend his life, or defend himself from bodily harm, and he may even pursue his assailant until the danger to his life and danger of bodily harm to him is past."

There is evident confusion in this instruction of two doctrines, viz. the doctrine of self-defense and the doctrine of defense of habitation. The two doctrines bear such marked resemblance to each other, however, as to be almost identical; but by reason of the varying circumstances attending them there are points of divergence in the doctrines. There is, however, the common principle in both, viz. that it is the necessity of preventing the commission of a felony which justifies the killing of the assailant. Thus, in case of personal assault, the attempted infliction of death or great bodily harm is the felony which authorizes the killing of the assailant. In cases of assault upon the habitation it is the felony of burglary, robbery, or like crimes, which authorizes the inhabitant of the dwelling to resist the assault, even to killing the assailant if necessary. Or if the assault upon the habitation is for the purpose of reaching and committing a felony upon the dweller therein, or one of his family, this justifies resistance to the extent of killing, if necessary to prevent the felony. Where expulsion of an intruder from a dwelling is attempted, a slightly different situation arises. The owner may expel the intruder, using all the force necessary to accomplish that end. He may take an affirmative and aggressive attitude, and if a conflict ensues, and the intruder endangers his life, or places him in great bodily harm, he may slay the intruder. But it is not true that a man may kill another in his house when under the same circumstances of danger, or

apparent danger, to person or property, he would not be justified in killing outside his house.   In personal encounters outside a dwelling, the appearances are usually plain and unmistakable, while in assaults upon or in dwellings the appearances are often not so plain, and apparently a greater latitude is, and should be, allowable, to a man in his own house in taking life.   But the principle governing action is the same in both cases.   Upon this subject see 21 Cyc. 828; 1 Bish. New Crim. Law, §§ 858, 859; 2 Bish. New Crim. Law, § 707; Carroll v. State, 23 Ala. 28, 58 Am. Dec. 282; State v. Patterson, 45 Vt. 308, 12 A. Rep. 200; Thompson v. State, 61 Neb. 210, 85 N. W. 62, 87 Am. St. Rep. 453; State v. Sumner, 55 S. C. 32, 32 S. E. 771, 74 Am. St. Rep. 707, and note; 13 R. C. L. Homicide, §§ 144, 145; note to Newman v. State (Tex.) 21 Ann. Cas. 721.

In view of what has been said, we have no criticism of instruction No. 18, except in its confusion of the two situations above mentioned.   But just why the court should have submitted any such proposition to the jury we do not understand, except that it was requested by the defendant.   Why the right to kill in self-defense, or in defense of habitation, was a question to be submitted to the jury, does not appear.   The defendant says that he never intended to kill deceased, did not attempt to kill him, and did not kill him.   No question as to the right to kill was involved, and the defendant was not entitled to have the same presented to the jury.

[10]   The giving of instruction No. 20 was not excepted to and need not necessarily be considered. The instruction, however, is unobjectionable.   It was intended to inform the jury that, if the assault by the defendant upon the deceased with a pistol was not in fact in defense of defendant's person, or for the purpose of expelling deceased from the dwelling, but was in fact for the purpose of engaging him in a difficulty, and of then killing him, the ap-

pellant could rely neither upon the law of self-defense, defense of habitation, nor accidental killing. We can see no objection to this statement of the law.

In connection with the discussion of these instructions, we do not wish to be understood as departing from the well-established practice of refusing to consider questions on instructions where they have not been duly saved. We have been led in this case to depart somewhat from the strict letter of the rule on account of the enormous consequences to the appellant; he being under sentence of death. For this reason alone, we have been desirous of satisfying ourselves that by no possibility has the defendant been unjustly convicted.

It follows from the foregoing that the court committed no errors in the instructions to the jury, to which the motion for a rehearing is directed, and that the former opinion in the case should be adhered to; and it is so ordered.

ROBERTS, C. J., and PARKER, J., concur.

SYLLABUS BY THE COURT.

