442 P.2d 589

STATE of New Mexico, Plaintiff-Appellee,

v.

Billie James ROSE, Defendant-Appellant.

No. 8486.

Supreme Court of New Mexico.

June 3, 1968.

Rehearing Denied July 15, 1968.

Timothy P. Woolston, John V. Coan, Albuquerque, for appellant.

Boston E. Witt, Atty. Gen., David R. Sierra, Robert L. Woodward, Asst. Attys. Gen., Santa Fe, for appellee.

## OPINION

CARMODY, Justice.

Appellant was convicted of voluntary manslaughter, and this appeal follows.

Appellant and the deceased, T. G. Rose, were husband and wife, living on a farm outside of Tucumcari, New Mexico. On February 11, 1966, at the residence of the parties, appellant shot and killed the de-

ceased. Appellant was charged with murder by an information filed by the district attorney. The State furnished a bill of particulars, which was to the effect that the killing was willful, deliberate and premeditated murder. A change of venue was had from Quay County to Curry County, where the case was tried.

There was a conflict in the testimony as to the occurrences immediately before and at the time of the homicide, the testimony on behalf of the State generally having been to the effect that the killing was premeditated murder, whereas the appellant attempted to show that the death was in self-defense, having occurred as a result of the deceased's attacking the appellant. The testimony was also in conflict with respect to the position of the deceased at the time of the shooting, i. e., whether the deceased was sitting or was attacking appellant with a 22 automatic at the time. There also seems to have been a question as to whether the 22 automatic was cocked when picked up by the sheriff. There was an irreconcilable conflict as to whether the appellant said, before the homicide, that she might leave the deceased, even while he was asleep, if he continued his abusiveness and drinking, or, contrariwise, if she had said, "I'm going to put him away, if I have to do it in his sleep, before I'll stand by and watch him mistreat another woman as he has mistreated me." Matters, other than those above relating to the investigation and the trial, will be mentioned under the separate points of error claimed by appellant.

■ Initially, appellant argues she was denied due process of law by reason of the State's suppression of material and essential evidence necessary to establish justifiable homicide. What is actually urged under this point is that the sheriff and the other investigating officers negligently failed to properly investigate and to preserve evidence at the scene of the homicide, or to make certain tests and measurements —that this amounts to suppression of evidence bearing on self-defense or justification. Although it is not entirely clear

from appellant's brief, two of the principal claimed failures in this connection seem to be that the sheriff did not "lift" the fingerprints from the 22 automatic which he found in the deceased's desk drawer, and that no actual experiments were made at the scene of the homicide under the exact conditions then existing with reference to the trajectory of the fatal bullet. We are at a loss to understand how any criticism could be made of the failure to lift the fingerprints from the automatic, inasmuch as it is plain that it would have been a useless act—the evidence is without contradiction that the deceased was the last person to handle the automatic, making it quite apparent that his prints would have been discovered thereon. Other failures by the sheriff are claimed which will be discussed later in this opinion. Suffice it to say here that, under the circumstances, we do not believe there was any duty upon the sheriff to do more than he did.

Appellant relies on Trimble v. State, 75 N.M. 183, 402 P.2d 162 (1965), and certain other cases from both federal and state jurisdictions which involved suppression of evidence. Each of the cited cases involved actual suppression, concealment or nondisclosure by the prosecutor of evidence or testimony, and does not in any sense relate to the claim made here, i. e., negligence on the part of the investigating officers. In Trimble, we discussed prejudice to the defendant in a criminal case because of the negligent failure of the prosecution to preserve evidence which it had seized, but this is a far cry from what occurred here. In this case it is the manner of investigation that is challenged—not the seizing and subsequent negligent loss or destruction of exculpatory evidence.

Stripped of all but the bare essentials, it appears that appellant seeks to have this court "second guess" the actions of the investigating officers. No doubt in this, as in many other investigations, officers later wish they had made a more complete, detailed investigation. In this instance, the offense having occurred some forty miles

out in the country, the investigation may have fallen short of "textbook" procedures, but we are not prepared to say on the facts of this case that the investigation requires a reversal.

Appellant then urges that since she was not charged with manslaughter, her motion to set aside the verdict and grant a new trial should have been granted. Suffice it to say in this connection that the trial court fully and completely instructed the jury on first and second degree murder, as well as voluntary manslaughter. No objection was made to these instructions as given by the court. As a matter of fact, the error claimed was not, as far as we can determine, ever brought to the attention of the trial court prior to the filing of a motion for new trial. In any event, appellant's claim is without merit. We have held many times, under the provisions of § 41–13–1, N.M.S.A.1953, that manslaughter is included in the charge of murder. State v. La Boon, 67 N.M. 466, 357 P.2d 54 (1960); State v. McFall, 67 N.M. 260, 354 P.2d 547 (1960); State v. Griego, 61 N.M. 42, 294 P.2d 282 (1956); State v. Roy, 40 N.M. 397, 60 P.2d 646, 110 A.L.R. 1 (1936); State v. Burrus, 38 N.M. 462, 35 P.2d 285 (1934); and compare, State v. Ulibarri, 67 N.M. 336, 355 P.2d 275 (1960). The 1963 amendments to the criminal code do not alter this result—manslaughter and murder are yet, as they were previously, set forth in separate sections. Compare, §§ 40A–2–1 and 40A–2–3, N.M.S.A.1953 (1964 Replacement) with §§ 40–24–4 and 40–24–7, N.M.S.A.1953.

Appellant next questions the ruling of the trial court in allowing a medical doctor to testify in some respects as to ballistics. The doctor went to the scene of the homicide with the sheriff. He testified both to the fact and cause of death. Aside from his qualifications as a medical expert, he was examined as to his knowledge of guns and ammunition. It developed that he made his own gun stocks, loaded his own ammunition, and had for ten or twelve years designed cartridges; he was familiar with several books on the subject of ballistics; and he was familiar with the muzzle velocity of various guns, especially that of a 25–35 caliber rifle which was the type of gun used in this case. The doctor described to the jury how muzzle velocities were determined, displayed broad knowledge of the grain weight of 25–35 caliber ammunition, and had his own equipment to determine the caliber of a bullet. With these qualifications, the trial court allowed the doctor to testify generally that, in his opinion, the wound through the body of the deceased would correspond with the hole in the chair. It was his opinion in view of this that the deceased had been sitting down when he was shot. There was no abuse of discretion on the part of the trial court in allowing this witness's testimony to be presented to the jury. State v. Deming, 66 N.M. 175, 344 P.2d 481 (1959); Bunton v. Hull, 51 N.M. 5, 177 P.2d 168 (1947); and Miera v. Territory, 13 N.M. 192, 81 P. 586 (1905). The witness was fully qualified by his experience so as to warrant the acceptance of his qualifications by recognized specialists in the field. State v. Padilla, 66 N.M. 289, 347 P.2d 312, 78 A.L.R.2d 908 (1959). He was subject to very thorough cross-examination. The value of his opinions went to their weight, not to his qualifications.

Appellant also challenges, as an abuse of discretion, the trial court's allowance of the sheriff to testify as to certain observations made by him. Strangely enough, in this case the sheriff's qualifications were apparently taken for granted because of long and honorable service in that capacity and he was asked no questions with respect to his qualifications. Be this as it may, he was permitted to testify as to facts which he observed at the scene of the homicide. He testified as to the location of the bullet hole in the back of the chair, certain scars on the desk in front of the chair which might have been from a bullet, and other objects in the kitchen. He testified that by utilizing a pool cue and lining it up with the hole in the chair and the

marks on the desk, it would seem that the appellant was standing in a certain general location in the kitchen. The measurements were admittedly approximations and were such as could be testified to by anyone who observed the situation.

The principal objection made by the appellant to this testimony is that the sheriff indicated that the chair which had the bullet hole in it was tilted backwards, and this was contrary to the testimony of the appellant to the effect that the deceased was leaning forward to get the automatic pistol out of the desk drawer. Basically, the testimony of the sheriff was to establish the general direction from whence the bullet came and the approximate distance that the appellant was from the deceased at the time of the homicide. This is the view that was taken by the trial court of the testimony concerning the so-called experiment—that although not scientifically accurate, it was nevertheless admissible. The admissibility of testimony, such as that with which we are here concerned, was explained in Hodgkins v. Christopher, 58 N.M. 637, 274 P.2d 153 (1954), where we quoted with approval Erickson's Dairy Products Company v. Northwest Baker Ice Machine Company, 165 Or. 553, 109 P.2d 53 (1941), as follows:

"Evidence of an experiment is admissible if it is of such nature as to aid the jury in determining the issues of fact. Obviously, some experiments would tend towards confusion rather than enlightenment: [Citation.] It is for the trial court in the exercise of its discretion to determine such preliminary question, and this court will not interfere unless there is an abuse thereof. No hard and fast rule can be announced as to the degree of similarity of conditions under which the experiment is to be made. It is plain, however, that the law does not require that the conditions be identical. It is sufficient if there is a substantial similarity of conditions."

See, also, Kling v. City and County of Denver, 138 Colo. 567, 335 P.2d 876 (1959);

and McCormick, Evidence, § 169 (1954). There was no abuse of discretion in the admission of this testimony. State v. Deming, supra; Bunton v. Hull, supra; and Miera v. Territory, supra.

As a final point relied upon for reversal, appellant briefly urges several claims: (1) That the jury should have been kept together because they might have been exposed to being tampered with or unduly influenced by prejudicial publicity. As to this, we find no merit, because there is absolutely no showing of any prejudice, and without such showing we cannot speculate thereon. State v. Embrey, 62 N.M. 107, 305 P.2d 723 (1956); cf. Martinez v. United States, 344 F.2d 325 (10th Cir. 1965); and State v. Williams, 78 N.M. 431, 432 P.2d 396 (1967). (2) That the court should have suppressed certain exhibits which were taken into custody by the sheriff. It is enough to say that the appellant was already in custody and the exhibits were not taken as a result of any unlawful search or seizure but in the process of arrest, State v. Herring, 77 N.M. 232, 421 P.2d 767 (1966), cert. denied, 388 U.S. 923, 87 S.Ct. 2126, 18 L.Ed.2d 1372. (3) That a motion for mistrial on the grounds of prejudicial publicity should have been granted. This subpoint related to an article in the Clovis newspaper preceding the third day of the trial. Here, again, there was no showing of any prejudice, there being only the statement of counsel that there might have been prejudice, and there was no showing that any juror read the article. (4) That there was insufficient evidence to sustain the manslaughter conviction. All that is necessary for us to say is that there was sufficient evidence, even under the circumstances testified to by the appellant herself, from which the jury could find that the shooting occurred in the heat of passion or as the result of a sudden quarrel. The claims of the appellant are without merit.

The judgment will be affirmed. It is so ordered.

CHAVEZ, C. J., and NOBLE, J., concur.