881 P.2d 679

STATE of New Mexico,
Plaintiff–Petitioner,

v.

Robert WARE, Defendant–Respondent.

No. 21492.

Supreme Court of New Mexico.

Aug. 29, 1994.

Tom Udall, Atty. Gen., Gail MacQuesten, Asst. Atty. Gen., Santa Fe, for petitioner.

Sammy J. Quintana, Chief Public Defender, Rita LaLumia, Asst. Appellate Defender, Santa Fe, for respondent.

## *OPINION*

BACA, Justice.

Pursuant to SCRA 1986, 12–502 (Repl. Pamp.1992), the State appeals the Court of Appeals' opinion in *State v. Ware*, 118 N.M. 326, 881 P.2d 686 (Ct.App.1993), which affirmed a trial court order suppressing certain evidence in the trial of Defendant–Appellee, Robert Ware. We granted certiorari to consider whether the Court of Appeals erred in affirming the trial court order. We reverse the Court of Appeals, and remand this case to the trial court for further proceedings.

## I.

On May 29, 1990, police officers responded to a call of domestic violence at Defendant's address. The officers found Betty Ann Martinez ("Martinez"), Defendant's girlfriend, bleeding from a wound on the back of her head. The officers also found the Defendant at the scene, with blood on his body and clothing. During the course of investigating the scene, the officers found a rock that had blood on it. The officers did not attempt to collect the rock itself, or samples from the rock, such as blood, other bodily fluids, cloth, fibers, or hair. Instead, a police detective photographed the rock where it was found. Following further investigation, the officers arrested Defendant at the scene.

A hearing before a grand jury was held on June 7, 1990. At the hearing, Martinez testified that someone other than Defendant chased her into the landlord's yard and pounded on her head with a rock.[1] Martinez testified that she could not identify her assailant and had no idea why someone would attack her. On June 8, 1990, the grand jury indicted Defendant on three counts of aggravated battery with a deadly weapon. *See* NMSA 1978, § 30–3–5(A) & (C) (Repl.Pamp. 1984).

On May 15, 1991, Defendant filed a Motion to Dismiss, claiming that the State's negligence in failing to preserve the rock violated his due process rights under the state and federal constitutions. The Defendant sought dismissal of the charges against him or suppression of any photographs or testimony pertaining to the rock. A hearing on the motion was held on May 16, 1991. At the hearing, Defendant argued that *State v. Lovato*, 94 N.M. 780, 782, 617 P.2d 169, 171 (Ct.App.1980), set forth the relevant test for destruction of evidence. Defendant maintained that the State's failure to preserve the rock resulted in prejudice to the Defendant because the rock could not be tested for hair, blood, or fibers, and because the rock could not be used to impeach prosecution witnesses. Defendant urged dismissal of the charges.

The State argued that Defendant had failed to show prejudice resulting from the failure to collect the rock. The State maintained that the police investigating the crime scene had simply made a judgment call and decided to photograph the rock rather than to take the rock into evidence. The State asserted that witnesses would verify the connection of the rock to the crime charged. Finally, the State contended that it had breached no duty to the Defendant by failing

---

**1.** The State claimed that Martinez told the officers at the scene that Defendant had beaten her on the head with a rock. Martinez testified at the grand jury hearing that she did not recall talking to the police because she blacked out after being hit.

321

to gather the rock, and requested that Defendant's motion be dismissed.

The trial court granted Defendant's motion and filed an Order of Prohibition on June 19, 1991. The court found that Defendant had been prejudiced by not being able to conduct tests of blood, bodily fluids, cloth, fibers, or hair from the rock, and by being denied the opportunity "to challenge the nexus of the rock to the incident." The court found that the State's failure to preserve physical evidence had violated Defendant's due process rights "as guaranteed by Article II, Section 18 of the New Mexico Constitution [and] by the Fifth Amendment of the United States Constitution." The court prohibited the State from introducing photographs of the rock and ruled that none of the State's witnesses could testify about the rock.

The State appealed the trial court's order to the Court of Appeals. The Court of Appeals affirmed the trial court's decision in an opinion filed on June 29, 1993. The Court of Appeals applied the three-part test articulated in *Lovato* and *State v. Chouinard,* 96 N.M. 658, 661, 634 P.2d 680, 683 (1981), *cert. denied,* 456 U.S. 930, 102 S.Ct. 1980, 72 L.Ed.2d 447 (1982), and held that "the police had a duty to collect and preserve the weapon alleged to have been used in the commission of the offenses and that Defendant was materially prejudiced by the State's failure to collect and preserve material evidence." *Ware,* 118 N.M. at 330, 881 P.2d at 690. This Court granted certiorari in this case on September 30, 1993.

## II.

On appeal, we address whether the Court of Appeals erred when it affirmed the trial court's order suppressing all evidence and testimony pertaining to the rock that Defendant allegedly used to assault Martinez. Defendant maintains that the State "breached its duty to preserve physical evidence which it had collected" when police photographed the rock, rather than collecting it for evidence. Defendant contends that the Court of Appeals was correct in upholding the trial court's suppression of all evidence regarding the rock under the test set forth by *Lovato* and *Chouinard.* This test determines

whether deprivation of evidence violates a criminal defendant's right to due process and requires suppression of the evidence if: "[ (1) ] The State either breached some duty or intentionally deprived the defendant of evidence; [ (2) ] [t]he improperly 'suppressed' evidence [was] material; and [ (3) ] [t]he suppression of [the] evidence prejudiced the defendant." *Chouinard,* 96 N.M. at 661, 634 P.2d at 683; *see also Lovato,* 94 N.M. at 782, 617 P.2d at 171.

The State argues that in this case, the police did not lose, destroy or fail to preserve physical evidence. The State contends that the police failed to collect evidence at the crime scene and that investigating officers do not have a duty to collect every piece of evidence at the scene. Consequently, the State maintains that the three-part test pronounced in *Lovato* and *Chouinard* does not apply in this case. Instead, the State asserts that the applicable standard is a test set forth by the United States Supreme Court in *California v. Trombetta,* 467 U.S. 479, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984), and *Arizona v. Youngblood,* 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988).

In affirming the trial court, the Court of Appeals concluded that the State has a " 'duty to preserve, where reasonably practical, relevant evidence obtained in the investigation of a crime.' " *Ware,* 118 N.M. at 329, 881 P.2d at 689 (quoting *State v. Stephens,* 93 N.M. 368, 369, 600 P.2d 820, 821 (1979)). Applying *Lovato* and *Chouinard,* the Court of Appeals held that "the police had a duty to collect and preserve the rock ..., the trial court [did not err] in finding that the rock constituted material evidence ..., [and that] Defendant was materially prejudiced by the State's failure to collect and preserve [the rock]." *Ware,* 118 N.M. at 330, 881 P.2d at 690.

## A.

■ We hold that the three-part test in *Lovato* and *Chouinard* does not apply to determine the admissibility of evidence in cases where the State fails to gather physical evidence during the investigation of a crime scene. As the State points out, our courts

have only applied *Lovato* and *Chouinard* in cases where evidence collected was lost, destroyed, or inadequately preserved.[2] Case law from New Mexico and other jurisdictions demonstrates that a clear distinction exists between suppression of evidence, failure to preserve evidence, and failure to gather evidence in the first instance during a criminal investigation.

We also reject the State's assertion that *Youngblood* and *Trombetta* apply to the facts of the case at bar. The State argues that *Trombetta* requires the collection and preservation of "constitutionally material" evidence.[3] 467 U.S. at 488–89, 104 S.Ct. at 2534. The State asserts that if police fail to collect evidence that is only potentially exculpatory, *Youngblood* requires the defense to show that the State acted in bad faith before the evidence is suppressed. 488 U.S. at 57–58, 109 S.Ct. at 337–38.

We reject the argument that *Trombetta* and *Youngblood* are applicable for the same reason we reject application of the test in *Lovato* and *Chouinard*. Both *Trombetta* and *Youngblood* are cases where evidence was seized by the State and subsequently destroyed, rather than cases where the State never gathered the evidence in the first place. *See Trombetta*, 467 U.S. at 482, 104 S.Ct. at 2530–31 (the arresting officers failed to preserve breath samples from drivers accused of driving while intoxicated); *Youngblood*, 488 U.S. at 53–54, 109 S.Ct. at 334–35 (the State failed to properly preserve samples and evidence of sexual assault). Conse-

quently, the test outlined in *Trombetta* and *Youngblood* is not relevant to the instant appeal.

### B.

■ The law recognizes three general circumstances that give rise to a claim that the State violated a criminal defendant's right to due process by failing to "provide evidence to the defense which is within, or potentially within, [the State's] purview." *State v. Steffes*, 500 N.W.2d 608, 612 (N.D.1993). The first circumstance arises when the State violates the defendant's due process rights by collecting and preserving evidence from the crime scene only to withhold the evidence "when the defendant requests it, or when it otherwise becomes material to the defense." *Id.* (citing *Brady v. Maryland*, 373 U.S. 83, 87, 83 S.Ct. 1194, 1196–97, 10 L.Ed.2d 215 (1963), which held that "suppression by the prosecution of evidence favorable to the accused upon request violates due process where the evidence is material either to guilt or to punishment").

■ A second circumstance arises when the State destroys, loses, or fails to preserve evidence that has previously been collected during the investigation of a crime. *Steffes*, 500 N.W.2d at 613; *State v. Judge*, 100 Wash.2d 706, 675 P.2d 219, 225 (1984) (en banc) (recognizing that the State's duty to preserve material evidence "is derived from the duty to disclose exculpatory evidence"). When this circumstance arises, the appellate

---

2. *See, e.g., Scoggins v. State*, 111 N.M. 122, 123–24, 802 P.2d 631, 632–33 (1990) (applying the *Chouinard* test where the State lost various evidence of a methamphetamine lab); *State v. Fero*, 107 N.M. 369, 370–71, 758 P.2d 783, 784–85 (1988) (applying the three-part test where evidence was removed from the crime scene by the police and later lost a few days before trial); *State v. Boeglin*, 105 N.M. 247, 254, 731 P.2d 943, 950 (1987) (the three-part test applied where the defendant claimed that the State withheld an original tape containing exculpatory evidence, thus depriving him of evidence); *State v. Gilbert*, 100 N.M. 392, 399, 671 P.2d 640, 647 (1983) (applying the *Chouinard* test to decide whether the results of a chemical test for the presence of acid phosphatase on a wooden spoon should be excluded because washings from the spoon became contaminated and were discarded, thus rendering the actual evidence "lost"), *cert.*

denied, 465 U.S. 1073, 104 S.Ct. 1429, 79 L.Ed.2d 753 (1984); *State v. Watley*, 109 N.M. 619, 622–23, 788 P.2d 375, 378–79 (Ct.App.1989) (applying principles from *Chouinard* and *Lovato* where the defendant claimed that procedures used by police allowed deterioration of serological evidence prior to testing), *cert. denied*, 109 N.M. 563, 787 P.2d 1246 (1990); *State v. Lucero*, 96 N.M. 126, 129, 628 P.2d 696, 699 (Ct.App. 1981) (applying three-part test where evidence in the State's custody was destroyed).

3. *Trombetta* defines "constitutionally material" evidence as evidence that possesses "an exculpatory value that was apparent before [it] was destroyed [or lost]," and that could not be replaced by comparable evidence collected by other reasonably available means. 467 U.S. at 489, 104 S.Ct. at 2534.

courts of New Mexico resort to the three-part test outlined in *Lovato* and *Chouinard* to determine whether a defendant's due process rights have been violated.

■ Finally, the third circumstance arises when the State fails to collect evidence from the crime scene in the first place. Usually, the failure to gather evidence is not the same as the failure to preserve evidence, and that the State generally has no duty to collect particular evidence at the crime scene. *See Steffes*, 500 N.W.2d at 612; *March v. State*, 859 P.2d 714, 716 (Alaska Ct.App.1993) (the State's duty to preserve evidence attaches at the time the State has gathered and taken possession of the evidence); *State v. Rivera*, 152 Ariz. 507, 733 P.2d 1090, 1094 (Ariz.1987) (en banc) (holding that the State has no affirmative duty "to seek out and gain possession of potentially exculpatory evidence"); *People v. Ventura*, 174 Cal.App.3d 784, 220 Cal.Rptr. 269, 274 (Ct.App.1985) (the duty to preserve evidence does not include an initial duty to gather or collect potential evidence for defendant's use at the crime scene); *People v. Rivera*, 765 P.2d 624, 628 (Colo.Ct.App. 1988) (holding that the "[m]ere failure to investigate does not constitute suppression of the evidence"); *rev'd on other grounds*, 792 P.2d 786 (1990); *State v. Wells*, 103 Idaho 137, 645 P.2d 371, 373 (Ct.App.1982) (holding that the State is not allowed to suppress evidence, but it need not collect evidence for the defendant); *State v. Stepter*, 794 S.W.2d 649, 655 (Mo.1990) (en banc) (stating the rule that the State does not have a duty to gather and present all physical evidence conceivably germane to its case); *State v. Heth*, 230 Mont. 268, 750 P.2d 103, 105 (1988) (holding that police officers have no affirmative duty to "search out favorable evidence for the defendant"); *Judge*, 675 P.2d at 225 (noting that *Brady* does not impose a duty on the State "to expand the scope of a criminal investigation"); *State v. Smith*, 125 Wis.2d 111, 370 N.W.2d 827, 836 (Ct.App.1985) (refusing to hold that "a defendant's right to due process [requires] that the [S]tate collect all evidence which might possibly turn out to be exculpatory"), *rev'd on other grounds*, 131 Wis.2d 220, 388 N.W.2d 601 (1986).

The distinction between the failure to preserve evidence gathered and the State's failure to collect evidence during the investigation of a crime scene was recognized by this Court in *State v. Rose*, 79 N.M. 277, 442 P.2d 589 (1968), *cert. denied*, 393 U.S. 1028, 89 S.Ct. 626, 21 L.Ed.2d 571 (1969). In *Rose*, the defendant was convicted of voluntary manslaughter in the shooting death of her husband. The defendant appealed her conviction and argued that the sheriff and other investigating officers negligently investigated the crime by failing to preserve evidence, conduct certain tests, or take various measurements at the scene. 79 N.M. at 278, 442 P.2d at 590. The defendant maintained that the mistakes made during investigation amounted to suppression of material evidence that purportedly justified the homicide, and thereby denied her due process. *Id.*

This Court affirmed the defendant's conviction and noted that there is a fundamental distinction between the failure to preserve material evidence after it has been seized, and the failure to gather evidence in the first instance when police officers are investigating a crime scene:

> [The defendant] relies on [various state and federal] cases.... Each of the cited cases involved actual suppression, concealment or nondisclosure by the prosecutor of evidence or testimony, and [do] not in any sense relate to the claim made here, i.e., negligence on the part of the investigating officers. In [*Trimble v. State*, 75 N.M. 183, 402 P.2d 162 (1965)], we discussed prejudice to the defendant in a criminal case because of the negligent failure of the prosecution to preserve evidence which it had seized, *but this is a far cry from what occurred here. In this case it is the manner of investigation that is challenged— not the seizing and subsequent negligent loss or destruction of exculpatory evidence.*

*Id.* (Emphasis added).

After recognizing this distinction, this Court suggested a somewhat deferential standard to be applied when reviewing police investigatory procedures and the failure to gather certain evidence:

Stripped of all but the bare essentials, it appears that [the defendant] seeks to have this court "second guess" the actions of the investigating officers. No doubt in this, as in many other investigations, officers later wish they had made a more complete, detailed investigation. In this instance, the offense having occurred some forty miles out in the country, the investigation may have fallen short of "textbook" procedures, but we are not prepared to say on the facts of this case that the investigation requires a reversal.

*Id.* at 278–79, 442 P.2d at 590–91. Other jurisdictions have similarly recognized the difference between the failure to gather evidence in the first place and the failure to preserve evidence already collected. For example, the Alaskan Court of Appeals recently stated that

[w]hile officers have a duty to preserve potentially exculpatory evidence actually gathered during a criminal investigation, the due process clause has never required officers to undertake a state-of-the-art investigation of all reported crimes. Officers investigating a crime need not "track down every conceivable investigative lead and seize every scintilla of evidence regardless of its apparent importance or lack of importance at the time, or run the risk of denying a defendant due process or his discovery rights."

*March,* 859 P.2d at 716 (quoting *Nicholson v. State,* 570 P.2d 1058, 1064 (Alaska 1977)); *see also, People v. Bradley,* 159 Cal.App.3d 399, 205 Cal.Rptr. 485, 489–90 (Ct.App.1984) (holding that the police do not have to gather up everything that might ultimately prove helpful to the defense).

*Bradley,* a case factually similar to the instant case, illustrates the application of the general rule that investigating officers are not required to gather physical evidence at the crime scene. In *Bradley,* the police were investigating the scene where a woman had been badly beaten in her home by a man who had broken into the home. 205 Cal.Rptr. at 486. Although there were numerous bloodstains at the scene, the investigating officer took fingerprints and photographs without taking sufficient samples of blood for testing.

*Id.* Later, the officer testified that his failure to take blood samples was either an oversight or based upon the feeling that the bloodstains were not sufficient for analysis. *Id.*

At trial, the defendant moved to dismiss the case for failure of the police to collect and preserve bloodstained articles at the scene. *Id.* at 487. In the alternative, the defendant asked the court to instruct the jury that any blood at the scene was not his. *Id.* The trial court concluded that the officers "had a duty to collect bloodstained articles and had negligently failed to do so." *Id.* The court decided that it would instruct the jury to presume that the bloodstains were not the defendant's. *Id.* The State appealed this ruling.

On appeal, the California Court of Appeals noted that the bloodstains may or may not have been material, *id.,* at 489, that the prosecution's case did not rely on bloodstain evidence, but on eyewitness testimony, *id.* at 490, and that "the failure to collect bloodstains was at worst an oversight," *id.* at 491. The Court concluded that the law did not "place a burden upon the police to engage in foresight and collect everything that might prove useful to the defense" merely because the police had secured the crime scene. *Id.* at 489–90. Accordingly, the Court held that the officers investigating the case "had no due process duty to collect bloodstained articles found at the scene of the crime to preserve them for defendant's use." *Id.* at 490.

## C.

■ While we recognize the rule that police officers generally have no duty to collect all potential evidence from a crime scene, we conclude that this rule is not absolute. We do not condone shoddy and inadequate police investigation procedures at the expense of a criminal defendant's right to a fair trial. In some cases, the State's failure to gather evidence may amount to suppression of material evidence. *See Bradley,* at 491 (noting that police "might have a duty at some point to seize an item of evidence"); *People v. Vigil,* 718 P.2d 496, 503 (Colo.1986) (en banc)

(recognizing that State agents may suppress evidence by failing to collect and preserve the evidence when performing routine procedures); *State v. Powers*, 555 So.2d 888, 890 (Fla.Dist.Ct.App.1990) (suggesting that failure to gather evidence may, in some circumstances, be equivalent to destruction of evidence by affirmative act), *review denied*, 563 So.2d 633 (1990); *State v. Wheelock*, 158 Vt. 302, 609 A.2d 972, 978 (1992) (noting that in some situations, the negligent failure to collect evidence might prejudice the defense). In formulating a test to determine whether the State should be sanctioned for failure to gather evidence from a crime scene, we consider the interests of both the criminal defendant and the State. A defendant has an interest in obtaining a fair trial. The State has an interest in the effectiveness of law enforcement, convicting guilty defendants, and revealing the truth in criminal proceedings. *See Bradley*, 205 Cal.Rptr. at 490–91. While the failure to gather evidence may, in some cases, amount to the suppression of evidence and deny the defendant a fair trial, "[t]o require that in every case the [S]tate must, in its investigation of a crime, leave no stone unturned would shift the line of fairness between the rights of an accused and the rights of society totally to one side." *Wells*, 645 P.2d at 373.

Generally, the courts have either expressly or impliedly considered two factors when faced with an argument that the State's failure to collect evidence deprived a defendant of his due process rights. The first factor is whether the evidence is relevant, material, or important to the defense, as opposed to extraneous or duplicative of other evidence. *Nicholson*, 570 P.2d at 1064; *State v. McGill*, 324 N.W.2d 378, 379 (Minn.1982); *Heth*, 750 P.2d at 105; *Smith*, 370 N.W.2d at 836. The second factor goes to the character of the officers investigating the crime scene—whether they acted in good faith, bad faith, or negligently when deciding not to gather the specific evidence at the crime scene. *See Nicholson*, 570 P.2d at 1064; *People v. Cooper*, 53 Cal.3d 771, 281 Cal.Rptr. 90, 115, 809 P.2d 865 (1991) (in bank), *cert. denied*, 502 U.S. 1016, 112 S.Ct. 664, 116 L.Ed.2d 755 (1991); *Bradley*, 205 Cal.Rptr. at 490; *Rivera*, 765 P.2d at 628; *Lolly. v. State*, 611 A.2d

956, 961 (Del.1992); *State v. Ames*, 109 Idaho 373, 707 P.2d 484, 486 (Idaho Ct.App.1985); *Heth*, 750 P.2d at 105; *Wheelock*, 609 A.2d at 978.

■ Based upon these factors, we adopt a two-part test for deciding whether to sanction the State when police fail to gather evidence from the crime scene. First, as a threshold matter the evidence that the State failed to gather from the crime scene must be material to the defendant's defense. Sanctions are not appropriate for failure to gather evidence immaterial to the defendant's defense. The determination of evidence materiality is a question of law for the court. Evidence is material only " 'if there is a reasonable probability that, had the evidence been [available] to the defense, the result of the proceeding would have been different.' " *State v. Fero*, 107 N.M. 369, 371, 758 P.2d 783, 785 (1988) (quoting *United States v. Bagley*, 473 U.S. 667, 682, 105 S.Ct. 3375, 3383, 87 L.Ed.2d 481 (1985)). A "reasonable probability" is " 'a probability sufficient to undermine confidence in the outcome.' " *Id.* (quoting *Bagley*, 473 U.S. at 682, 105 S.Ct. at 3383–84).

■ If the evidence is material to the defendant's defense, then the conduct of the investigating officers is considered. If the trial court determines that the failure to collect the evidence was done in bad faith, in an attempt to prejudice the defendant's case, then the trial court may order the evidence suppressed. If it is determined that the officers were grossly negligent in failing to gather the evidence—for example, by acting directly contrary to standard police investigatory procedure—then the trial court may instruct the jury that it can infer that the material evidence not gathered from the crime scene would be unfavorable to the State. *See McGill*, 324 N.W.2d at 379; *City of Albert Lea v. Tasker*, 411 N.W.2d 909, 911 (Minn.Ct.App.1987); *Wheelock*, 609 A.2d at 978. When the failure to gather evidence is merely negligent, an oversight, or done in good faith, sanctions are inappropriate, but the defendant can still examine the prosecution's witnesses about the deficiencies of the investigation and argue the investigation's

shortcomings against the standard of reasonable doubt. *See Cooper,* 281 Cal.Rptr. at 115, 809 P.2d at 890 (in bank); *Lolly,* 611 A.2d at 961; *Wells,* 645 P.2d at 373; *State v. Sadowski,* 247 Mont. 63, 805 P.2d 537, 546 (1991). The State is, after all, still charged with proving its case beyond a reasonable doubt, *see State v. Havatone,* 159 Ariz. 597, 769 P.2d 1043, 1046 (Ct.App.1989); *State v. Rowan,* 703 S.W.2d 7, 8 (Mo.Ct.App.1985), and in many cases, the failure to gather physical evidence at the crime scene impairs the State's ability to prove its case. *See State v. Willcoxson,* 156 Ariz. 343, 751 P.2d 1385, 1389 (Ct.App.1987) (noting that the defendant was able to exploit the shortcomings of police photographs). We believe that this test strikes a fair balance between safeguarding the defendant's right to a fair trial while taking into account society's interest in having effective law enforcement, obtaining convictions for guilty defendants, and in insuring that the truth in criminal proceedings is revealed.

In the instant case, we conclude that the rock allegedly used to batter Martinez is material to Defendant's defense. Although it is a close call, we believe that there is a reasonable probability that the unavailability of the rock could affect the outcome of the case. However, much like the case in *Bradley,* the record before us indicates that the decision to photograph the rock, rather than collect it as physical evidence, was a judgment call and certainly not anything more than mere inadvertence or ordinary negligence on the part of the police. Thus, we hold that suppression of the evidence of the rock was inappropriate and that the trial court abused its discretion by suppressing this evidence.

In conclusion, we hold that the Court of Appeals erred by applying the test outlined in *Lovato* and *Chouinard,* and by affirming the trial court order suppressing any evidence of the rock. We reverse the order of the trial court and remand this case for trial. During the trial on remand, Defendant can argue the shortcomings of the police investi-gation against the standard of reasonable doubt.

**IT IS SO ORDERED.**

RANSOM and FRANCHINI, JJ., concur.