This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellant,

v.                                                    **NO. 33,181**

**DANIEL MARTINEZ,**

Defendant-Appellee.

**APPEAL FROM THE DISTRICT COURT OF CIBOLA COUNTY**
**George P. Eichwald, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
M. Anne Kelly, Assistant Attorney General
Albuquerque, NM

for Appellant

Jorge A. Alvarado, Chief Public Defender
Will O'Connell, Assistant Appellate Defender
Santa Fe, NM

for Appellee

**MEMORANDUM OPINION**

**GARCIA, Judge.**

{1} Defendant, Daniel Martinez, was charged with aggravated driving while intoxicated (DWI), contrary to NMSA 1978, Section 66-8-102(D)(3) (2010). Defendant moved to suppress two videos recorded by deputies during the DWI investigation, along with the arresting deputy's testimony about the field sobriety tests (FSTs) he administered to Defendant. The district court suppressed both of the videos and the arresting deputy's testimony about the FSTs, apparently as a sanction for the arresting deputy's failure to fix his audio equipment that had been malfunctioning prior to his encounter with Defendant. The State appeals, contending that the district court abused its discretion in suppressing the videos and testimony. We agree. Therefore, we reverse the suppression order and remand the case to the district court for further proceedings.

**BACKGROUND**

**The DWI Investigation**

{2} A car driven by Defendant was observed at the side of a highway with its hazard lights flashing when the arresting deputy stopped and approached to ask if Defendant was okay. The deputy smelled an odor of alcohol coming from the car while talking to Defendant. He asked Defendant to step out of his car to perform FSTs. The arresting deputy's dash camera recorded a video of the deputy conducting the horizontal gaze nystagmus test with Defendant, but no audio was recorded. The

2

dash camera stopped recording video part way through this test because the camera's memory card had become full. As a result, the dash camera captured none of the other FSTs. Another deputy who had stopped to assist the arresting deputy was wearing a vest camera that captured audio and video of the arresting deputy's FST instructions to Defendant, portions of Defendant's performance of the walk-and-turn test, and Defendant's entire performance of the one-leg-stand test.

**The Suppression Motion, Hearing, and Order**

{3}    Defendant moved to suppress the videos and the arresting deputy's testimony about the FSTs. He asserted that the dash camera video was "without sound or completeness[,]" the other video was "entirely unusable[,]" and "neither [of the] videos permit[ted] the defense to properly prepare for cross examination of the deputy." Defendant also asserted that the arresting deputy's testimony should be suppressed because Defendant could not adequately cross examine the deputy about the FSTs without adequate video and audio of the FSTs.

{4}    At the suppression hearing, the videos were played, and the arresting deputy testified. The other deputy who assisted in Defendant's DWI investigation was not permitted to testify at the hearing on the basis that he was disclosed late as a witness. The arresting deputy stated in his testimony, "I had a video on my dash camera. However, the audio had not been working properly for a period of time. I tried to get

it fixed. It was never fixed properly." The deputy also testified that he had detailed the FSTs in his report but he provided no testimony about these details. On cross examination, defense counsel presented the deputy with Defendant's booking packet report and reminded the deputy of testimony he made during an interview prior to the hearing. The deputy acknowledged that he performed the horizontal gaze nystagmus test on Defendant, but that his booking packet report stated that Defendant "[c]ould not complete" this test. The deputy also confirmed that he had inadvertently misrepresented Defendant's performance on the walk-and-turn test in the booking packet report by failing to delete language describing a different person's performance on the test. The deputy testified that he could not remember Defendant's performance on the walk-and-turn test and confirmed that he had told defense counsel in the prior interview that people perform the test "almost . . . identical on every stop." Defendant argued to the district court that any testimony by the deputy concerning the FSTs should be suppressed because he did not remember the FSTs and his written report about the FSTs was not trustworthy.

{5}     After hearing the arguments and evidence, the district court announced its decision from the bench. It orally stated that the videos were "incomplete" and that the lack of audio in the arresting deputy's video was

> more than gross negligence. It's almost reckless to not . . . ensure that
> that type of recording device is working properly. I'm going to grant

4

your motion. I'm going to suppress both videos. . . . I'm also going to suppress any testimony with respect to the field sobriety test[s]. It's . . . Defendant's right to cross-examine the deputy, because they did not preserve the videos.

{6}     The written suppression order later entered by the district court did not include the district court's oral statements concerning "gross negligence" or "recklessness" that addressed the arresting deputy's failure to fix his audio equipment. Instead, the written order included the following statements relevant to this appeal:

2.     The video tapes received into evidence . . . for the purposes of this hearing and recorded by the arresting deputy . . . and the vest cam video recorded by [the] assisting deputy . . . are incomplete and otherwise defective and do not accurately depict the conduct of the standard field sobriety tests alleged to have been conducted in this investigation[;]

3.     The defects in the [S]tate's video tapes admitted into evidence were subject to the control of the [S]tate[;]

4.     The [S]tate's equipment for recording and storing both video and audio were not functioning properly at the time of the investigation[;]

5.     The arresting deputy knew for some time prior to this investigation that his microphone for recording was not operating and did not correct the problem[;]

6.     The video recording without audio was not completely preserved by the [S]tate[;]

7.     The arresting deputy did not present any testimony supporting the independent admission of the standard field sobriety tests alleged to have been conducted in this matter[;]

. . . .

5

10. . . . Defendant has carried his burden of proof and shown that the defective videos . . . and the testimony of the arresting deputy . . . are material to the charges alleged against him as well as to his defense of those charges[;]

11. . . . Defendant has carried his burden of proof and shown that he is prejudiced by the defects in the [S]tate's video recordings and the loss or destruction of the complete recordings by the [S]tate[;]

12. The testimony of the arresting deputy is insufficient to establish an independent basis for admission of the standard field sobriety tests[;] and

. . . .

14. The remedy in this matter is the suppression of [the S]tate's video tape recordings and the testimony regarding the standard field sobriety tests[.]

**The State's Arguments on Appeal**

{7} On appeal, the State argues that the district court abused its discretion when it suppressed the videos and the arresting deputy's testimony about the FSTs. It submits that its failure to record audio and video of the complete FSTs is a scenario in which "the State collected evidence but lost, destroyed, or failed to preserve it. As such, the three-part test from *Chouinard* applies[.]" *See State v. Chouinard*, 1981-NMSC-096, ¶ 16, 96 N.M. 658, 634 P.2d 680. The State asserts that the district court should not have suppressed the videos and the deputy's testimony because "there was no evidence that the State breached a duty to Defendant or intentionally deprived Defendant of the evidence of the videotape of the FSTs" and because the record "does

6

not support a finding of materiality or prejudice to support the district court's conclusory findings." The State also contends that the district court should not have excluded the arresting deputy's testimony about the FSTs because "[a]ny inconsistencies, discrepancies, or memory lapses can be explored in cross-examination."

**DISCUSSION**

**Standard of Review**

**{8}** We review the granting of a motion to sanction by suppression of evidence for abuse of discretion. *State v. Duarte*, 2007-NMCA-012, ¶ 3, 140 N.M. 930, 149 P.3d 1027. "An abuse of discretion occurs when the ruling is clearly against the logic and effect of the facts and circumstances of the case. We cannot say the trial court abused its discretion by its ruling unless we can characterize it as clearly untenable or not justified by reason." *Id.* (internal quotation marks and citation omitted). A district court also abuses its discretion when it uses an incorrect legal standard or misapplies the law. *See Brooks v. Norwest Corp.*, 2004-NMCA-134, ¶ 7, 136 N.M. 599, 103 P.3d 39. In determining whether the district court abused its discretion, "[w]e view the facts in the manner most favorable to the prevailing party and defer to the district court's findings of fact if substantial evidence exists to support those findings[,]" but we review the application of the law to the facts de novo. *State v. Hubble*, 2009-NMSC-

014, ¶ 5, 146 N.M. 70, 206 P.3d 579 (internal quotation marks and citation omitted).

**Failure to Audio and/or Video Record a DWI Investigation**

{9} Initially, we reject the State's and Defendant's position in their briefs asserting that the three-part test articulated by our Supreme Court in *Chouinard* applies to the facts of this case. *See State v. Guerra*, 2012-NMSC-027, ¶ 9, 284 P.3d 1076 (noting that appellate courts are not bound by the state's concessions on appeal); *State v. Harrison*, 2010-NMSC-038, ¶ 15, 148 N.M. 500, 238 P.3d 869 (stating that appellate courts are not bound by a defendant's concessions). In *State v. Ware*, 1994-NMSC-091, 118 N.M. 319, 881 P.2d 679, our Supreme Court recognized that the three-part *Chouinard* test does not apply to the state's failure to gather evidence while investigating a crime. *See Ware*, 1994-NMSC-091, ¶¶ 11, 16 ("Usually, the failure to gather evidence is not the same as the failure to preserve evidence, and . . . the [s]tate generally has no duty to collect particular evidence at the crime scene."). Here, the arresting deputy's microphone did not work at the time he conducted the DWI investigation, and his dash camera failed to record anything more than a brief portion of the horizontal gaze nystagmus test. These facts illustrate a failure to gather evidence—i.e., the deputy failed to gather audio and video footage of the FSTs—and not a failure to preserve evidence that had already been gathered. Thus, the *Chouinard* test does not apply. *See Ware,* 1994-NMSC-091, ¶ 15 (stating that New Mexico courts

8

apply the three-part *Chouinard* test where the state "destroys, loses, or fails to preserve evidence *that has previously been collected during the investigation of a crime*") (emphasis added).

{10} Our Supreme Court instead adopted a different test "to determine whether the [s]tate should be sanctioned for failure to gather evidence from a crime scene" that considers the interest of the defendant in obtaining a fair trial and the interest of the state in "effectiveness of law enforcement, convicting guilty defendants, and revealing the truth in criminal proceedings." *Id.* ¶ 23. This failure to gather evidence test has two prongs. "First, as a threshold matter the evidence that the [s]tate failed to gather from the crime scene must be material to the defendant's defense." *Id.* ¶ 25. Whether evidence is material is a question of law. *Id.* "Evidence is material only if there is a reasonable probability that, had the evidence been available to the defense, the result of the proceeding would have been different." *Id.* (alteration, internal quotation marks, and citations omitted). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (internal quotation marks and citations omitted). Second,

> [i]f the evidence is material to the defendant's defense, then the conduct of the investigating officers is considered. If the trial court determines that the failure to collect the evidence was done in bad faith, in an attempt to prejudice the defendant's case, then the trial court may order the evidence suppressed. If it is determined that the officers were grossly negligent in failing to gather the evidence—for example, by acting

9

directly contrary to standard police investigatory procedure—then the trial court may instruct the jury that it can infer that the material evidence not gathered from the crime scene would be unfavorable to the [s]tate. When the failure to gather evidence is merely negligent, an oversight, or done in good faith, sanctions are inappropriate, but the defendant can still examine the prosecution's witnesses about the deficiencies of the investigation and argue the investigation's shortcomings against the standard of reasonable doubt. . . . [I]n many cases, the failure to gather physical evidence at the crime scene impairs the [s]tate's ability to prove its case.

*Id.* ¶ 26 (citation omitted).

{11} As to the first prong, we conclude that Defendant failed to establish the materiality to his defense that would have been available through video and audio footage of Defendant's FSTs, had the arresting deputy's camera been functioning properly. We reach this conclusion because Defendant did not show or even allege in the district court that, had the arresting deputy captured the full audio and video of Defendant's FSTs on his dash camera, there was a reasonable probability that Defendant would be acquitted of the DWI charge. *See id.* ¶ 25. Defendant did not allege that the deputy's instructions about the FSTs were inadequate, or that he performed the tests satisfactorily and his satisfactory performance was not captured due to the arresting deputy's defective equipment. Because this threshold materiality prong has not been met, we need not consider the second prong concerning the arresting deputy's conduct in failing to capture audio and video of the entire FSTs on his dash camera. *See id.* ¶¶ 25-26 (stating that materiality is a "threshold matter" and

10

that the investigating officer's conduct is considered only "[i]f the evidence is material to the defendant's defense"). Accordingly, we conclude that the district court abused its discretion when it suppressed both deputies' videos and the arresting deputy's testimony as a sanction for the arresting deputy's failure to have functioning audio equipment during the DWI investigation. *See Duarte*, 2007-NMCA-012, ¶ 3; *see also Ware*, 1994-NMSC-091, ¶ 25 ("Sanctions are not appropriate for failure to gather evidence immaterial to the defendant's defense.").

{12}    We further note, for the benefit of the district court on remand, that even if the district court could have reached the second prong concerning the deputy's conduct, and if the district court had included its oral finding that the deputy's conduct, was "more than gross negligence" and "almost reckless" in its written suppression order, the proper remedy was not suppression of both videos and the arresting deputy's testimony. "If it is determined that the officers were grossly negligent in failing to gather the evidence[,] . . . then the trial court may instruct the jury that it can infer that the material evidence not gathered . . . would be unfavorable to the [s]tate." *Ware*, 1994-NMSC-091, ¶ 26. The district court may order suppression of evidence only "[i]f the [district] court determines that the failure to collect the evidence was done in bad faith, in an attempt to prejudice the defendant's case[.]" *Id.*

**Suppression of Videos and the Arresting Deputy's Testimony on Other Grounds**

11

{13}     It is unclear from the district court's suppression order whether it suppressed the videos and the arresting deputy's testimony about the FSTs on other grounds in addition to the ground of sanctioning the State for failing to record the FSTs. Along with the finding that the State failed to properly preserve the video evidence, the order states that the videos were "incomplete and otherwise defective and do not accurately depict the conduct of the standard field sobriety tests" and that the arresting deputy "did not present any testimony supporting the independent admission of the standard field sobriety tests alleged to have been conducted[.]" The order does not cite any other legal basis for suppressing evidence based on it being incomplete, defective, or inaccurate, nor does the order provide a legal basis for excluding witness testimony based on the witness's failure to remember details of the events or discrepancies between the witness's testimony and his written report. And Defendant does not provide an alternate legal basis in his answer brief that would persuade us to affirm the district court's decision to suppress this evidence because it is right for another reason. *See Cordova v. World Fin. Corp.*, 2009-NMSC-021, ¶ 18, 146 N.M. 256, 208 P.3d 901 (recognizing that "[g]enerally, an appellee . . . may advance any ground for affirmance on appeal" and that appellate courts may affirm the district court's order on such ground even though the order did not rely upon it as long as doing so would not be unfair to the appellant (internal quotation marks and citation omitted)); *see also*

12

Rule 12-213(A)(4), (B) NMRA (requiring the answer brief to contain argument with citation to supporting authorities).

**{14}** Lastly, we note that "[r]elevant evidence is admissible unless any of the following provides otherwise: the United States or New Mexico constitution, a statute, these rules, or other rules prescribed by the Court." Rule 11-402 NMRA. "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Rule 11-403 NMRA. Neither party alleges that the two videos and the arresting deputy's testimony about the FSTs are not relevant evidence in this case, irrespective of any issues regarding their trustworthiness. The defense will have an opportunity to impeach the arresting deputy's testimony at trial concerning the FSTs, including his failure to remember them, the defects concerning the FSTs in his report, and his failure to have working audio equipment during the FSTs. Because neither Defendant nor the district court has provided a sufficient legal basis for suppressing the deputy's testimony and the two videos, we conclude that the district court's suppression of this relevant evidence was error and resulted in an abuse of discretion. *See Duarte*, 2007-NMCA-012, ¶ 3.

**CONCLUSION**

{15}     We reverse the district court's suppression order and remand the case to the district court for further proceedings.

{16}     **IT IS SO ORDERED.**

                                        _____
                                        **TIMOTHY L. GARCIA, Judge**

**I CONCUR:**

_____
**J. MILES HANISEE, Judge**


**RODERICK T. KENNEDY, Judge (dissenting)**.

**KENNEDY, J., dissenting.**

{17}     I believe that the standard of review in this case requires three things of this Court: viewing the facts in the manner most favorable to the prevailing party, deferring to the district court's findings of fact if substantial evidence supports them, and affirming the district court in its discretion so long as its ruling is not unjustified or untenable. A license to apply law to the facts de novo in a suppression case is a heady thing. *Hubble*, 2009-NMSC-014, ¶ 15. When combined with the majority's accepting an invitation to ignore the parties' concessions on appeal, that is presented by *Guerra*, and *Harrison*, it seems the majority has nothing but clear sailing to reach a result it might have chosen had it been the district court. It applies legalisms throughout the majority opinion in a case where factual findings drive the proper exercise of the court's discretion. I would have affirmed the district court for the following reasons.

{18}     This case where Defendant was contacted roadside with his broken down car presents two aspects. First, is the district court's dissatisfaction with the quality and relevance of the evidence generally, its specific assessments of the shoddiness of the deputies' discharge of their duty to reasonably conduct and record their investigation, both on paper, and employing their electronic recording devices. Second, in its assessment that in the totality of the evidence, the lack of competent, relevant

15

evidence makes the lack of video-ensured objectivity material, and the failure to generate it prejudicial to Defendant. This case does not deal with destruction or failure to preserve evidence; I do not believe *Chouinard* has any application. This is a sort of hybrid case under *Ware*, in that the police undertook to collect evidence—as a matter of apparently standard procedure—but did not employ either competent or effective methods for doing so, with the result that only part of the available evidence was collected as a result of their negligence. *See* Martina Kitzmueller, *Are You Recording This?: Enforcement of Police Videotaping*, 47 Conn. L. Rev. 167 (2014) (discussing the duty to record and preserve video evidence in New Mexico and other states).

{19} Video evidence of roadside encounters provides objective proof for what otherwise is evidence entirely based on the officer's observations relayed to the court through testimony weeks or years after the fact. In view of this fact, the existence of video documentation of an investigation can be critical to preparing a defense that is capable of impeaching the otherwise sole source of evidence. Video evidence of field sobriety tests is material, as the district court found. The majority's re-weighing of the evidence, Majority Op. ¶ 12, fails to take into account the district court's factual findings regarding deficiencies in the remaining evidence of field sobriety and chemical test evidence that made the recordings critical to the preparation of a defense. This case demonstrated that the administering officer's written report of

16

SFSTs pertained to another person entirely, showed wild variations in the electronic time stamps for videos and the breath test of supposedly calibrated clocks, and failed to show any documentation in the breath card of four of five breath samples the officer said Defendant provided, creating a black hole of evidence into which videotapes, if competently recorded, would be entirely material. The sum of deficiencies allows for a reasonable probability the outcome of the case would have been different. *Ware*, 1994-NMSC-091, ¶ 25. Applying proper deference, I would hold that the district court's assessment of this threshold issue was met. Unfortunately, having reached its somewhat rote conclusion on materiality, the majority walks away from further analysis.

**{20}** Where this case departs from *Ware* is that the Cibola County Sheriff's Department, presumably recognizing that video evidence is an important source of material first-hand information, has employed both dash and body video equipment to record all encounters between their deputies and the public, but does not maintain its equipment to finish gathering the evidence, even when defects in the process are known. Our Supreme Court noted in *Ware* that, "[w]e do not condone shoddy and inadequate police investigation procedures at the expense of a criminal defendant's right to a fair trial. In some cases, the State's failure to gather evidence may amount to suppression of material evidence." *Id.* ¶ 23 The district court commented that

17

employing a defective recorder was "more than gross negligence. . . . almost reckless not–to ensure that that type of recording device is working properly." When the defects were known prior to the stop. Here, Deputy McCowen's dash video did not record audio—a problem he had known about, but was never fixed for some time. Even worse, neither Deputy McCowen nor his department had apparently ascertained how much memory was left on the card in the recorder—a function that stopped the recorder after the first field sobriety test. This insignificant part resulted in the district court's finding that the recordings submitted by the officers were "incomplete and otherwise defective, and do not accurately depict the conduct of the standard field sobriety tests alleged to have been conducted in this investigation." As noted, there were other factors that demonstrated the incompleteness of the other evidence and elevated the materiality of the fouled-up videos. These are findings of fact bearing on the content and relevance of all the evidence presented by the State, not an assessment of the State's legal duty with regard to the videos alone. To give the required deference to the district court's fact finding, the whole of the factual picture—and the presumption that the result is validly supported thereby—must guide our analysis.

{21}    The district court enumerated a number of other defects in the evidence surrounding the recordings beyond Deputy McCowen's employing known faulty equipment; conflicting time-stamps between the videos and the breath card (indicating

18

that the breath test was given forty-five minutes prior to the field tests, and rendering the breath card and result inadmissible as well) and the lack of an independent basis for admitting evidence of the field sobriety tests, inasmuch as Deputy McCowan's other testimony was insufficient for admission of his testimony.[1] It found that the evidence was material to the preparation of the defense, and that Defendant had been prejudiced by the State's failures to present reliable evidence—that transcended just the failed recordings, implicating the relevance of the breath test as well. Additionally, the breath card reflected one test sample attempted, while Deputy McCowen testified he gave Defendant five attempts at blowing. All of these findings and conclusions are adequately supported by the record.

{22}     This case presents a failure by Deputy McCowan to discharge a duty to finish collecting evidence once the process of its collection had started, and the district court's conclusion that pervasive problems with all of the evidence rendered it unworthy of admission. The district court's finding that the recordings were material is not disputed. Defendant was contacted because he appeared to be broken down on

---

[1] The deputy testified that he had submitted a form police report in the case describing Defendant's field test performance as "Spin, turn, and then stop and start. Asked me to continue. Lifted arms several times." These results were from another person, by using a pre-printed form containing the results of other tests that he had obtained from the State Police, and did not have anything to do with Defendant's actions. He stated, "when I went through, I didn't do a complete check of the paperwork before I printed it out."

the side of the road. After a conversation, Deputy McCowan administered field sobriety tests and arrested Defendant for DWI. The deputy testified that the audio on his dash camera had not been working "for a period of time[,]"and "was never fixed properly[,]" despite an attempt to do so. The deputy was also aware that its internal clock was frequently wrong, despite testifying that it was correct on the tape shown in court. Its time stamp was different than that on Deputy Sarracino's video.

{23} The district court was explicit: there were problems with all of the evidence. In ruling for Defendant, the court mentioned that both recordings made by the officers were "pretty synchronized at 2256 . . . in the middle of the field sobriety test[,]" yet "the first air blank [on the breath card] is 2211." This led to the suppression of the breath card because "I don't know whether it is inaccurate. Is it the breath card keeping the time or the video keeping the time[,]" and the fact that Defendant was "given one time to blow. . . . usually it's at least twice." The district court considered the quality of the evidence, and the officers' explanations for its poor quality and inconsistencies of which they were aware that the court termed "more than gross

negligence[; i]t's almost reckless to not–to ensure that the type of recording device is working properly."

{24} It might be argued that the majority opinion still leaves room for the district

20

court to make a ruling on the issue that might be more to its liking; negative inference instructions or encouraging vigorous cross examination are yet possible under *Ware*, and if the evidence in this case is insufficient to prove the elements of the crime as a matter of law, to direct a verdict of acquittal. Such further proceedings would, however, be unnecessary had the majority hewed more closely to the standard of review.

 

                                                 _____

**RODERICK T. KENNEDY, Judge**